**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

No. 10-60227

March 15, 2011

Lyle W. Cayce
Clerk

BARBARA ELAM; BOBBY ELAM,

Plaintiffs - Appellants

v.

THE KANSAS CITY SOUTHERN RAILWAY COMPANY; RONALD L.
MICHAEL,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Plaintiff-Appellant Barbara Elam allegedly suffered injuries when she drove her automobile into the side of a train. Elam and her husband brought this state law tort action against the train's owner and its engineer in Mississippi state court. The Elams claim the defendants were negligent per se in violating Mississippi's antiblocking statute, which purports to regulate the amount of time a train may occupy a crossing. The Elams also claim the defendants negligently failed to maintain adequate warnings of the train's presence at the crossing. The case was removed to federal district court. The district court held the Interstate Commerce Commission Termination Act (ICCTA) completely preempted the Elams' negligence per se claim and preempted their simple negligence claim. We hold the ICCTA completely

No. 10-60227

preempts the Elams' negligence per se claim but does not preempt their simple negligence claim.

## I.  BACKGROUND

On November 18, 2006, plaintiff Barbara Elam drove her automobile into the side of a train owned by defendant Kansas City Southern Railway Company (KCSR) and operated by defendant Ronald L. Michael, the train's engineer (together KCSR, unless otherwise indicated).  The train was performing switching operations at the Pine Crest Road crossing in Corinth, Mississippi, and was stopped at the time of the accident.  Elam allegedly suffered injuries, and she and her husband, Bobby Elam, brought this state law tort action against KCSR in Mississippi state court.  The Elams assert KCSR was negligent per se in violating Mississippi's antiblocking statute, Mississippi Code § 77-9-235, which limits the amount of time a train may occupy a road crossing.  The Elams also assert KCSR negligently failed to provide adequate warnings of the train's presence at the crossing.[1]  The Elams seek actual and punitive damages.

KCSR removed this action to the Northern District of Mississippi. Although both Michael and the Elams are residents of Mississippi, KCSR invoked the district court's diversity jurisdiction on the ground that Michael was not a proper party.  KCSR also invoked federal question jurisdiction on the ground that the ICCTA completely preempted the Elams' state law claims.

The Elams moved to remand for lack of subject matter jurisdiction.  The district court found it lacked diversity jurisdiction, but nonetheless exercised removal jurisdiction on the ground that the ICCTA completely preempted the

---

[1]  Bobby Elam additionally asserts a claim of tortious interference with spousal relationship, but this claim is based on "the combined and concurrent negligence of the defendants."  The claim thus rises or falls with the Elams' negligence claim.

2

No. 10-60227

Elams' claims.  The Elams moved for clarification as to whether the ICCTA preempted all their claims or only their negligence per se claim.  The district court issued a second order specifying that the ICCTA expressly and completely preempted the Elams' negligence per se claim and impliedly preempted their simple negligence claim.  The district court then sua sponte dismissed the action without prejudice so it could be refiled with the Surface Transportation Board, the federal agency that implements the ICCTA.  The Elams appealed.

## II. STANDARDS

Federal subject matter jurisdiction is limited and must be conferred by Congress within the bounds of the Constitution.  *See, e.g.*, U.S. CONST. art. III, § 2; *Cary v. Curtis*, 44 U.S. 236, 245 (1845); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 179 (1803).  Litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent.  *See, e.g.*, *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).  We may examine the district court's subject matter jurisdiction, sua sponte if necessary.  *See, e.g.*, *United States v. Corrick*, 298 U.S. 435, 440 (1936); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  Legal questions concerning federal jurisdiction are reviewed de novo. *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006).

The preemptive effect of a federal statute is a question of law we review de novo.  *Franks Inv. Co. LLC v. Union Pacific R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc); *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001).  The party asserting federal preemption has the burden of persuasion. *AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)).

No. 10-60227

## III. DISCUSSION

We hold the district court had removal jurisdiction over this action because the ICCTA completely preempts the Elams' negligence per se claim. We next hold the ICCTA does not preempt the Elams' simple negligence claim, at least on the current record.

## A.   Federal jurisdiction and the Elams' negligence per se claim

A federal district court has removal jurisdiction over an action if the district court could have exercised original jurisdiction over it. 28 U.S.C. § 1441(a). We hold the district court could have exercised original federal question (and supplemental) jurisdiction over this action because the ICCTA completely preempts the Elams' negligence per se claim.

1.   Principles of federal preemption

A plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint. *Id*. Accordingly, "there is no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (quoting *Bernhard*, 523 F.3d at 551). That federal law might provide a defense to a state law cause of action does not create federal question jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

An exception to the well-pleaded complaint rule arises when Congress "so completely preempt[s] a particular area that any civil complaint raising this

4

select group of claims is necessarily federal in character." *Gutierrez*, 543 F.3d at 252 (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)). Under the "complete preemption" doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (internal quotation marks and brackets omitted); *see also Franks*, 593 F.3d at 407. "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Barrois*, 533 F.3d at 331; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Complete preemption must be distinguished from "defensive preemption" (i.e., "conflict preemption" or "ordinary preemption"). *Barrois*, 533 F.3d at 331. Defensive preemption does not create federal jurisdiction and simply "declares the primacy of federal law, regardless of the forum or the claim." *Id*. "As a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Id*. Indeed, complete preemption is a "narrow" exception to the well-pleaded complaint rule. *Beneficial*, 539 U.S. at 5.

In determining the nature and reach of federal preemption, Congress's intent is the "ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Congress can indicate its preemptive intent either expressly through a statute's plain language, or impliedly through a statute's "structure and purpose." *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008). Regardless of

No. 10-60227

how Congress indicates its intent, we begin "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotation marks and citation omitted); *Franks*, 593 F.3d at 407. This assumption applies with "particular force" when Congress legislates in a field traditionally occupied by state law. *Altria*, 129 S. Ct. at 543. On the other hand, the assumption applies with less force when Congress legislates in a field with "a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). "Historically, federal regulation of railroads has been extensive . . . ." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 46 (1st Cir. 2008).

The Elams' well-pleaded complaint asserts only state law claims of negligence and negligence per se. Ordinarily, these state law claims would not support original federal question jurisdiction. The issue is whether any of these claims is completely preempted by federal law.

2.    The state and federal statutes at issue

The Elams assert KCSR was negligent per se in violating Mississippi's antiblocking statute.[2] The Elams specifically allege KCSR "failed to uncouple

---

[2] Mississippi's antiblocking statute provides:

Every railroad company, upon stopping any train at a place where such railroad shall cross a highway, shall so uncouple its cars as not to obstruct travel upon such highway for a longer period than five (5) minutes. Every railroad company shall, upon stopping a train at a place where the railroad is crossed by a street, so uncouple the cars as not to obstruct travel thereon for a longer period than shall be prescribed by ordinance of the city, town or village. A failure to observe this section shall cause a railroad company to be liable to a fine of Fifty Dollars ($50.00) for each offense.

MISS. CODE § 77-9-235.

No. 10-60227

its cars so as not to obstruct traffic on Pine Crest Road" and obstructed the Pine Crest Road crossing "for a period in excess of five minutes" at the time of the accident.

Effective January 1, 1996, the ICCTA abolished the Interstate Commerce Commission (ICC) and created a new Surface Transportation Board (STB) to regulate, inter alia, rail transportation in the United States.  49 U.S.C. § 10501(a)(1); *Friberg*, 267 F.3d at 442.  The purpose of the ICCTA is to "build[] on the deregulatory policies that have promoted growth and stability in the surface transportation sector."  H.R. Rep. No. 104-311, at 93 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 805.  With respect to rail transportation, the ICCTA seeks to implement a "[f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation," and to retain only regulations "that are necessary to maintain a 'safety net' or 'backstop' of remedies to address problems of rates, access to facilities, and industry restructuring."  *Id.* at 93, 96; *see also* 49 U.S.C. § 10101(2).

The ICCTA creates exclusive federal regulatory jurisdiction and exclusive federal remedies.  Specifically, the ICCTA provides:

The jurisdiction of the [STB] over–

(1)  transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2)  the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

7

No. 10-60227

is exclusive.  Except as otherwise provided in this part, the remedies
provided under this part with respect to regulation of rail
transportation are exclusive and preempt the remedies provided
under Federal or State law.

49 U.S.C. § 10501(b).

Section 10501(b) thus has two sentences:  the first "defining the authority
of the STB in dealing with the fundamental aspects of railroad regulation, and
barring others from interfering with those decisions by making the jurisdiction
exclusive"; and the second providing that the "remedies available at the STB
dealing with 'rates, classifications, rules, . . . practices, routes, services, and
facilities of such carriers,' are exclusive." *Franks*, 593 F.3d at 409-10.  We refer
to these two sentences as the exclusive-jurisdiction provision and the exclusive-
remedies provision, respectively.  The exclusive-remedies provision is "the
relevant part of Section 10501(b)" for determining the scope of the ICCTA's
preemption of state law. *Id.* at 410.  Focusing on the word "regulation" in the
exclusive-remedies provision, we have held that § 10501(b) expressly preempts
"only laws that have the effect of *managing* or *governing* rail transportation."
*Id.* (emphasis added).[3]  Similarly, "[t]o the extent remedies are provided under
laws that have the effect of regulating [i.e., managing or governing] rail

---

[3] *See also PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009)
(quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)
("Congress narrowly tailored the ICCTA preemption provision to displace only 'regulation,' i.e.,
those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail
transportation, while permitting the continued application of laws having a more remote or
incidental effect on rail transportation.")); *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*,
550 F.3d 533, 539 (6th Cir. 2008) (same).

No. 10-60227

transportation," they too are expressly preempted. *Id*.[4] On the other hand, § 10501(b) does not expressly preempt generally applicable state laws that have a mere "remote or incidental effect on rail transportation." *Id*.[5] If a state law is not expressly preempted by the ICCTA, it still may be impliedly preempted if, as applied to a particular case, it has "the effect of unreasonably burdening or interfering with rail transportation." *Id*. at 414.

As a final matter, we observe Congress was particularly concerned about state *economic* regulation of railroads when it enacted the ICCTA. The House Report on the ICCTA states that § 10501(b) reflects a "[f]ederal policy of occupying the entire field of economic regulation of the interstate rail transportation system" and establishes "the direct and complete pre-emption of State economic regulation of railroads." H.R. Rep. No. 104-311, at 95-96. The House Report explains:

> [a]lthough States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation . . . .

---

[4] *See also Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1070 (11th Cir. 2010) (finding that states may not circumvent ICCTA with tort remedies).

[5] *See also Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010) (recognizing that ICCTA permits the "continued application of laws having a more remote or incidental effect on rail transportation"); *PCS Phosphate*, 559 F.3d at 218 (same); H.R. Conf. Rep. No. 104-422, at 167 (1995), *reprinted in* 1995 U.S.C.C.A.N. 850, 853 (stating that "exclusivity is limited to remedies with respect to rail regulation – not State and Federal law generally").

*Id.* at 96. The preemptive effect of § 10501(b) may not be limited to state economic regulation,[6] but economic regulation is at the core of ICCTA preemption. *See Friberg*, 267 F.3d at 443 ("[I]t appears manifest that Congress intended the ICCTA to further that exclusively federal [regulatory] effort, at least in the economic realm."); *see also Fayus Enters. v. BNSF Ry. Co.*, 602 F.3d 444, 451 (D.C. Cir. 2010) (recognizing that "the core of ICCTA preemption is 'economic regulation'"); *PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 219 (4th Cir. 2009) (observing that voluntary agreements "do not fall into the core of economic regulation that the ICCTA was intended to preempt").

3.   The ICCTA completely preempts the Elams' negligence per se claim.

In *Friberg v. Kansas City Southern Railway*, we held the ICCTA at least defensively preempted a negligence per se claim based on a state antiblocking statute substantially identical to the Mississippi statute at issue in this case.[7] 267 F.3d at 444. We reasoned that the ICCTA does not permit states to directly regulate "a railroad's economic decisions such as those pertaining to train length, speed or scheduling." *Id. at* 444. Sitting en banc, we confirmed this holding in *Franks Investment v. Union Pacific Railroad.* 593 F.3d at 411. The only issue here is whether *Friberg* applies to the context of complete preemption.

---

[6]   *See, e.g.*, *Ass'n of Am. R.R.*, 622 F.3d at 1098 (rejecting argument that "ICCTA preempts only economic regulation"); *Fayus Enters. v. BNSF Ry. Co.*, 602 F.3d 444, 451 (D.C. Cir. 2010) ("Several of the cases, in addressing these environmental regulations, note that the ICCTA 'does not preempt only explicit economic regulation.'").

[7]   *Friberg* did not address whether the ICCTA completely or merely defensively preempted Texas's antiblocking statute. Texas's antiblocking statute "prohibited railroad officers, agents, servants or receivers from wilfully allowing a standing train to block a street, highway or railroad crossing for more than five minutes." *Friberg*, 267 F.3d at 441 n.2.

No. 10-60227

We have already held the ICCTA completely preempts state law tort actions that "fall squarely" under § 10501(b). *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 540 (5th Cir. 2005);[8] *Barrois*, 533 F.3d at 331. We have not yet defined what it means to "fall squarely" under § 10501(b), but our cases provide some guidance. First, as discussed above, § 10501(b) expressly preempts only state laws that "manage or govern" rail transportation. *Franks*, 593 F.3d at 411; *see also* H.R. Conf. Rep. No. 104-422, at 167 (1995), *reprinted in* 1995 U.S.C.C.A.N. 850, 853 (stating that "exclusivity is limited to remedies with respect to rail regulation – not State and Federal law generally"). This suggests a state law does not "fall squarely" under § 10501(b) unless it attempts to manage or govern rail transportation. Second, we have recognized the core purpose of § 10501(b) is to prevent states from regulating rail transportation in the "economic realm." *Friberg*, 267 F.3d at 443; *see also Fayus*, 602 F.3d at 451. This recognition is consistent with Congress's intent regarding the completely preemptive effect of § 10501(b). *See* H.R. Rep. No. 104-311, at 95-96 (asserting "the direct and complete pre-emption of State economic regulation of railroads."). This suggests a state law does not "fall squarely" under § 10501(b) unless it attempts to manage or govern rail transportation in the economic realm. Lastly, we have specifically determined that a state law tort remedy that would directly regulate a railroad's switching rates and services falls squarely under § 10501(b). *PCI*, 418 F.3d at 540; *see also Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1188 (10th Cir. 2008) (citing *PCI* and finding state law tort remedy targeting delivery services on rail spur completely preempted). Implicit

---

[8] In *PCI*, we held the ICCTA completely preempted a claim of intentional interference with contractual relations that sought injunctive relief imposing a variety of restrictions on a rail operator's fees and delivery practices. 418 F.3d at 538.

No. 10-60227

in our determination was a recognition that a rail operator's decisions about switching rates and services are economic decisions. *See Friberg*, 267 F.3d at 444 (finding that a railroad's economic decisions include "those pertaining to train length, speed or scheduling").

We read these cases together as establishing that § 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm.[9]  Put another way, when a plaintiff's tort claim directly attempts to manage or govern a railroad's decisions in the economic realm, that claim "is either wholly federal or nothing at all." *Barrois*, 533 F.3d at 330.

The Elams' negligence per se claim fits this mold.  Mississippi's antiblocking statute directly attempts to manage KCSR's switching operations, including KCSR's decisions as to train speed, length, and scheduling.  The statute thus "reach[es] into the area of economic regulation," *Friberg*, 267 F.3d at 443-44, "in a direct way." *Franks*, 593 F.3d at 411.  Because Mississippi's antiblocking statute is a direct attempt to manage KSCR's decisions in the economic realm, the statute is completely preempted by the ICCTA.  And because the Elams' negligence per se claim is based solely on Mississippi's antiblocking statute, it too is completely preempted.

We note the economic effects of Mississippi's antiblocking statute are not merely incidental to an otherwise valid state law. *See Franks*, 593 F.3d at 411. Unlike generally applicable state property laws and rules of civil procedure that on their face "have nothing to do with railroad crossings," *id.*, Mississippi's

---

[9] We need not define the contours of the "economic realm."  Wherever they lie, we have held they include antiblocking statutes like the one at issue in this case.  *See Friberg*, 267 F.3d at 444.

No. 10-60227

antiblocking statute homes in on "railroad compan[ies]" and rail "cross[ings]." MISS. CODE § 77-9-235. Indeed, the statute has no application except with respect to the operation of railroads at rail crossings.

The Elams point out that their negligence per se claim, unlike the negligence per se claim at issue in *Friberg*, involves "safety issues." But focusing on the Elams' particular reason for enforcing Mississippi's antiblocking statute misses the point. Regardless of why the Elams brought their negligence per se claim, the effect of the claim is to economically regulate KCSR's switching operations. To be sure, not every state law targeting rail operations is completely preempted by the ICCTA. Under the standards we have discussed, the ICCTA will not completely preempt valid exercises of a state's police powers in most cases. *See Fayus*, 602 F.3d at 451 (distinguishing economic regulations from public health, safety, and environmental regulations).[10] Indeed, the Federal Railroad Safety Act (FRSA) expressly provides that states may enact (and citizens may enforce) rail safety laws in certain circumstances. *See* 49 U.S.C. § 20106(a)(2), (b)(1); *see also Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 523 (6th Cir. 2001) ("[T]he ICCTA and its legislative history contain no evidence that Congress intended for the STB to supplant the FRA's authority over rail safety."). But we have already determined that a state antiblocking statute like the one at issue in this case does not pertain to "traditionally state-controlled

---

[10] *See also Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 160 (4th Cir. 2010) (same); *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1133 (10th Cir. 2007) (same); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir. 2005) (same); H.R. Rep. No. 104-311, at 95-96 (stating that states retain police powers); H.R. Conf. Rep. No. 104-422, at 167 (stating that "exclusivity is limited to remedies with respect to rail regulation – not State and Federal law generally").

safety issues." *Friberg*, 267 F.3d at 444 n.18.   The statute therefore is incompatible with the ICCTA and not saved by the FRSA.[11]

We emphasize our holding so far is not broad.   We do not anticipate many state law claims will be completely preempted (and thus removable to federal court) under the standards we have discussed.   Complete preemption applies only when a plaintiff's claim directly attempts to manage or govern a railroad's decisions in the economic realm.   A negligence per se claim based on Mississippi's antiblocking statute happens to be one such claim.

4.   The district court would have original jurisdiction over the Elams' negligence per se claim.

The Elams approach the complete preemption issue from yet another perspective.   The Elams contend the district court could not have exercised original (and hence removal) jurisdiction over their negligence per se claim because the STB has "exclusive" jurisdiction over claims under the ICCTA.   *See* 49 U.S.C. § 10501(b)(1) (providing that STB has "exclusive" jurisdiction over remedies provided in ICCTA).   The Elams point to the Second Circuit's decision in *Sullivan v. American Airlines*, which held that the Railway Labor Act (RLA) does not completely preempt state-law-based minor disputes because minor disputes under the RLA cannot be filed in the first instance in federal court.   424 F.3d 267, 276 (2d Cir. 2005).   The Elams' argument is unpersuasive in the context of the ICCTA for several reasons.

---

[11] The FRSA provides that certain state safety laws and personal injury actions are not preempted as long as, inter alia, they are "not incompatible" with other federal laws. *See* 49 U.S.C.§ 20106(a)(2)(B), (b)(1)(B) (emphasis added).

No. 10-60227

First, we have already held the ICCTA may completely preempt at least some state law tort claims. *See PCI*, 418 F.3d at 540. This alone prevents us from adopting *Sullivan*'s reasoning in this context.

Second, the district court would have had original jurisdiction over the Elams' negligence per se claim under 28 U.S.C. §§ 1331 and 1337. Section 1337 authorizes "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . ." 28 U.S.C. § 1337(a); *see also* 28 U.S.C. § 1331 (authorizing original jurisdiction of all civil actions arising under federal laws). For the reasons already discussed, the Elams' negligence per se claim arises under the ICCTA, a federal statute protecting interstate rail transportation against state regulation and restraints. *See CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 252 (3d Cir. 2007) (recognizing original "federal question jurisdiction under 28 U.S.C. § 1337 over cause of action arising under the Interstate Commerce Act"); *Fla. E. Coast Ry.*, 266 F.3d at 1326 (same); *cf. Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 533-34 (1983) (per curiam) (recognizing federal question jurisdiction and § 1337 jurisdiction over claim arising under Interstate Commerce Act); *Louisville & N.R. Co. v. Rice*, 247 U.S. 201, 202-03 (1918) (same).

Third, the plain text of the ICCTA contemplates civil actions against rail carriers. Section 11704(c)(1) provides "[a] person may file a complaint with the Board under section 11701(b) of this title *or bring a civil action under subsection (b) of this section* to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under this part." 49 U.S.C. § 11704(c)(1). Subsection (b) states "[a] rail carrier providing transportation subject to the jurisdiction of the Board under this part is liable

15

No. 10-60227

for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." 49 U.S.C. § 11704(b).  As the First Circuit has correctly observed, "[t]he most natural reading of this language is that it authorizes a person who has suffered damages as a result of a rail carrier's violation of the ICCTA either to file a complaint with the STB or to bring a civil action."  *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.*, 215 F.3d 195, 202 (2000); *see also  I.C.C. v. Atl. Coast Line R.R. Co.*, 383 U.S. 576, 579-80 (1966) (stating that under former Interstate Commerce Act, a "complainant is given the alternatives of seeking such damages by complaint to the Commission . . . or of bringing suit in a federal district court").

Fourth, courts have repeatedly applied the judicial doctrine of "primary jurisdiction" in the context of both the ICCTA and its predecessor statute, the Interstate Commerce Act (ICA).  *See, e.g.*, *Atl. Coast Line*, 383 U.S. at 579-80 (ICA); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956) (same); *Hansen v. Norfolk & W. Ry. Co.*, 689 F.2d 707, 710 (7th Cir. 1982) (same); *Novolog*, 502 F.3d at 252 (ICCTA); *Pejepscot*, 215 F.3d at 202 (same).  The doctrine of primary jurisdiction attempts to maintain "proper relationships between the courts and administrative agencies" by suspending judicial process pending the "referral" of certain issues to an administrative agency for its views. *W. Pac.*, 352 U.S. at 63-64; *see also* 28 U.S.C. § 1336(b) (providing district court may refer action to STB for determination).  Despite its name, the doctrine of primary jurisdiction "is not related to the *subject matter jurisdiction* of the district court over the underlying action."  *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 136 (2d Cir. 2010); *see also Reiter v. Cooper*, 507 U.S. 258, 268 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction . . . .").  Indeed, the doctrine of primary jurisdiction *presumes*

16

original federal subject matter jurisdiction. *See W. Pac.*, 352 U.S. at 63-64 (stating that doctrine of primary jurisdiction "applies where a claim is *originally* cognizable in the courts" (emphasis added)); *Ill. Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 595 (7th Cir. 2008) ("Despite the term primary jurisdiction, the reference of a case to an agency pursuant to that doctrine, rather than denying the jurisdiction of the court over the case, presupposes that jurisdiction."). Thus, when courts have applied the doctrine of primary jurisdiction to claims under the ICA and the ICCTA, they have also implicitly acknowledged the claims were properly filed in federal court.

To the extent §§ 11501(b)(1) and 11704(c)(1) are in tension, we must attempt to read the provisions "together to produce a harmonious whole." *Doe v. KPMG, LLP*, 398 F.3d 686, 688 (5th Cir. 2005); *see also Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995) (stating acts of Congress "should not be read as a series of unrelated and isolated provisions"). In fact, we think the doctrine of primary jurisdiction provides the best way to reconcile §§ 10501(b) and 11704(c)(1). Under the ICA, the ICC had "exclusive primary jurisdiction" to decide certain matters affecting transportation policy. *W. Pac.*, 352 U.S. at 63. Viewed in this light, § 10501(b) also may be interpreted as vesting the STB with "exclusive" primary jurisdiction over the remedies provided in the ICCTA. 49 U.S.C. § 10501(b)(1). When a civil action in federal court arises under the ICCTA, the action ordinarily should be stayed and the relevant claims referred to the STB. But recognizing the STB's primary jurisdiction does not divest the district court of its original subject matter jurisdiction. *Reiter*, 507 U.S. at 268. Thus interpreted, § 10501(b) and the doctrine of primary jurisdiction ensure both that the STB remains the primary policy maker on matters arising under the

17

No. 10-60227

ICCTA, and also that matters falling squarely under the ICCTA do not languish in state courts for lack of federal removal jurisdiction.

Furthermore, when the text of a statute is susceptible of more than one reasonable meaning, we may look to legislative history to discern legislative intent. *See United States v. Valle*, 538 F.3d 341, 345 (5th Cir. 2008). Here, legislative history suggests Congress did not intend § 10501(b) to preclude original (or removal) federal jurisdiction over claims arising under the ICCTA.

For one, Congress was clear that § 10501(b) establishes the "complete pre-emption" of state economic regulation of railroads. H.R. Rep. No. 104-311, at 95-96. Complete preemption and removal jurisdiction are simply two sides of the same coin: a finding of complete preemption "represents a conclusion that all claims on the topic arise under federal law, so that 28 U.S.C. § 1441 permits removal." *Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009); *see also Barrois*, 533 F.3d at 661 ("Complete preemption is a 'jurisdictional doctrine . . . .'"). In expressing its intent to completely preempt state economic regulation of railroads, Congress also was expressing its intent that claims attempting to enforce such state regulations would be removable. As the First Circuit recognized in *Pejepscot*, the basic purpose of the ICCTA is to federalize the regulation of rail transportation, not deprive the federal courts of jurisdiction. 215 F.3d at 204-05.

Moreover, legislative history indicates that current § 11704(c)(1) was intended to "*reenact*[] the applicable rail portions of former section 11705" of the ICA. H.R. Conf. Rep. No. 104-422, at 195 (emphasis added). Current

18

No. 10-60227

§ 11704(c)(1) is almost identical to former § 11705(c)(1),[12] and "civil actions against rail carriers under [former § 11705] were routinely brought in federal district court." *Pejepscot*, 215 F.3d at 203; *see also Atl. Coast Line*, 383 U.S. at 579-80 (recognizing ICA gives complainant choice of "bringing suit in a federal district court"); *S. Pac. Transp. Co. v. San Antonio, Tex. by and through City Pub. Serv. Bd.*, 748 F.2d 266, 271 n.11 (5th Cir. 1984) ("Although the notion of exclusive jurisdiction in the I.C.C. may once have found voice in the Supreme Court . . . subsequent cases have established that reasonableness claims may be brought in federal court."). Notably, courts found original federal jurisdiction under the ICA even though the ICC's jurisdiction, like the STB's jurisdiction, was described as "exclusive." *See* 49 U.S.C. § 10501(d) (1994). We will not presume Congress intended § 10501(b) to withdraw original federal jurisdiction over claims arising under the ICCTA, particularly when such jurisdiction was commonly exercised under the similarly worded ICA. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 (2002) (declining to presume Congress intended to withdraw federal question jurisdiction); *Cannon v. Univ. of Chi.*, 441 U.S. 667, 696-98 (1979) (presuming Congress was aware of judicial interpretations of earlier statute).

For the reasons stated, the Elams' negligence per se claim arises under the ICCTA, and the district court would have had original jurisdiction over the claim under 28 U.S.C. §§ 1331 and 1337. The district court therefore had removal jurisdiction under 28 U.S.C. § 1441. Moreover, the district court had

---

[12] Under the ICA, § 11705 provided: "A person may file a complaint with the [ICC] under section 11701(b) of this title or bring a civil action under subsection (b)(1) or (2) of this section to enforce liability against a common carrier providing transportation subject to the jurisdiction of the [ICC] . . . ." 49 U.S.C. § 11705(c)(1) (1994).

supplemental jurisdiction over the Elams' other state law claims because they all arise out of the same common nucleus of operative fact, namely, the accident at the Pine Crest Road crossing. *See* 28 U.S.C. § 1367(a); *Giles v. NYL Care Health Plans, Inc.*, 172 F.3d 332, 337-38 (5th Cir. 1999) ("When a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction . . . over the remaining claims."). Accordingly, we hold the district court properly exercised jurisdiction over this action.

5.    Referral to the STB was not required.

The Supreme Court has stated "[n]o fixed formula exists for applying the doctrine of primary jurisdiction." *W. Pac.*, 352 U.S. at 64. We have recognized agency referral is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973). A district court "has discretion either to retain jurisdiction [while the action is refereed to the agency] or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter*, 507 U.S. at 268-69. In any event, "the doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to 'an expensive and merely delaying administrative proceeding'" when there are no substantial issues for the agency to decide. *Local Union No. 189 v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965) (quoting *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 521 (Frankfurter, J., dissenting); *Skaw v. United States*, 740 F.2d 932, 938 (Fed. Cir. 1984).

No. 10-60227

Here, the district court did not abuse its discretion in dismissing without prejudice the Elams' negligence per se claim. The ICCTA establishes liability "for damages sustained by a person as a result of an act or omission of that carrier *in violation of this part*." 49 U.S.C. § 11704(b). The Elams allege they sustained damages because KCSR blocked the Pine Crest Road crossing for more than five minutes, but the Elams do not contend blocking a road crossing for more than five minutes violates any provision of the ICCTA or the STB's regulations. Indeed, we held in *Friberg* that "nothing in the ICCTA" provides authority for imposing operating limitations on a railroad like those imposed by Mississippi's antiblocking statute. 267 F.3d at 444. Because the Elams have not identified any substantial claim or issue requiring resolution by the STB, it would be futile to refer their negligence per se claim to the STB. The district court properly dismissed this claim.

For the reasons stated, we AFFIRM the dismissal of the Elams' negligence per se claim.

6.    Diversity Jurisdiction

A federal district court may exercise original diversity jurisdiction under 28 U.S.C. § 1332 only if the plaintiffs and the defendants are completely diverse. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Id.* Although both Michael and the Elams are residents of Mississippi, KCSR contends the district court could have exercised diversity jurisdiction over this action because Michael is an improper party. The district court properly rejected this contention.

21

No. 10-60227

We have recognized two ways for a defendant to show improper joinder for purposes of federal diversity jurisdiction: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Only the second way is relevant to this case, and thus the test for improper joinder is whether KCSR has demonstrated there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against" Michael. *Id.* We resolve "all contested factual issues and ambiguities of state law in favor of" the Elams. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

Our decision in *Travis v. Irby* is closely on point. In *Travis*, a train struck an automobile at a rail crossing. 326 F.3d 644, 646 (5th Cir. 2003). The driver's mother sued the owner of the train and the train's engineer in state court. *Id.* Although both the plaintiff and the engineer resided in Mississippi, the defendants attempted to remove the action based on federal diversity jurisdiction. *Id.* The district court denied the plaintiff's motion to remand, finding the engineer was improperly joined because the plaintiff did not at the time have evidence to support her claims against the engineer. *Id.* at 649. We reversed, observing that "[u]nder Mississippi law, [the engineer] owed a duty to exercise reasonable care to avoid injuring [the driver] at the railroad crossing." *Id.* (citing *New Orleans & N.R. Co. v. Lewis*, 58 So. 2d 486, 490 (1952)). We also observed the engineer "can be held personally responsible for negligent acts committed within the scope of his employment." *Id.* (citing *Harrison v. Ill. C. R.R. Co.*, 219 Miss. 401, 69 So.2d 218, 222 (1954)). We concluded that "simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient

22

No. 10-60227

to show that there is no possibility for [the plaintiff] to establish [the engineer]'s liability at trial." *Id.* at 650-51.

Here, as in *Travis*, the Elams allege facts providing at least a reasonable basis to predict Michael was negligent. The Elams allege Michael blocked "the crossing without giving any warning or signal indicating the locomotive engine and freight cars were present." The Elams also allege Michael failed to "maintain warning devices, bells, lights, flashing signals, or other reasonable warning devices calculated to warn approaching motorists of the stationary locomotive engine and train." KCSR, of course, disputes these allegations. KCSR asserts "Michael did in fact blow the train's whistle and ring its bell as it approached the Crossing and continued to sound these warnings in compliance with Kansas City Southern's rules and Mississippi law until the train had fully occupied the Crossing." Mississippi law, however, appears to require that a "bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is *passed*." MISS. CODE § 77-9-225 (emphasis added). KCSR also relies on Mississippi's "occupied crossing rule," which provides that "a train legitimately stopped or standing over a public crossing because of its tremendous size is all the warning the traveling public is entitled to." *King v. Ill. Central R.R.*, 337 F.3d 550, 553 (5th Cir. 2003). The Elams, however, invoke the "peculiar environment or hazardous condition" exception to the occupied crossing rule. *See id.*

In short, there are contested issues of fact and ambiguities of state law that must, at this jurisdictional stage, be resolved in the Elams' favor. *Gasch*, 491 F.3d at 281. Accordingly, we find Michael is not an improper party to this action, and the district court therefore would not have diversity jurisdiction over this action.

## B.    The Elams' simple negligence claim

Having established federal jurisdiction, we now turn to whether the ICCTA preempts the Elam's simple negligence claim.  We conclude it does not, at least on the current record.

A typical negligence claim seeking damages for a typical crossing accident (such as the Elams' simple negligence claim) does not directly attempt to manage or govern a railroad's decisions in the economic realm.  Like state property laws and rules of civil procedure that generally "have nothing to do with railroad crossings," the effects of state negligence law on rail operations are merely incidental.  *Franks*, 593 F.3d at 411.  Accordingly, we conclude the ICCTA does not expressly or completely preempt the Elams' simple negligence claim.

Because the ICCTA does not completely preempt the Elams' simple negligence claim, our inquiry is whether Mississippi's negligence law, as applied to the facts of this case, would "have the effect of unreasonably burdening or interfering with" KCSR's operations.  *Id*. at 414.  Our inquiry is "fact-based," and KCSR must come forward with evidence of the specific burdens imposed.  *Id*. at 415.    General evidence that rail crossings affect rail transportation is insufficient.  *Id*.  Moreover, we begin with the assumption that Congress did not intend to supersede the historic police powers of the states "to protect the health and safety of their citizens."  *Medtronic*, 518 U.S. at 475; *Demahy v. Actavis, Inc.*, 593 F.3d 428, 435 (5th Cir. 2010).  As this Court recognized in *Barrois*, "the care of grade crossings is peculiarly within the police power of the states."  533 F.3d at 333 (citing *Lehigh Valley R.R. Co. v. Bd. of Publ. Util. Comm'rs* 278 U.S. 24, 35 (1928)); H.R. Rep. No. 104-311, at 96 (stating "States retain the police powers reserved by the Constitution . . . .").

No. 10-60227

The Elams assert several theories of negligence. In essence, the theories all allege that KCSR failed to provide adequate warnings of the train's presence at the Pine Crest Road crossing.[13] The issue is whether KCSR has demonstrated that providing such warnings would unreasonably burden or interfere with its switching operations.

KCSR has produced an affidavit asserting:

[l]imiting the amount of time KCS[R] can block a crossing, including the crossing in question, or otherwise regulating how KCS[R] uses the tracks in switching, will directly impact KCS[R]'[s] operation, and will necessitate changes in switching, train length, and crew operations. Such would, in turn, adversely impact KCS[R] economically since such would affect how and when KCS[R] trains arrive and depart, and the number of separate trains KCS[R] must operate.

This affidavit does not defeat the Elams' simple negligence claim for two reasons. First, although the affidavit addresses the burdens of Mississippi's antiblocking statute, it does not address the burdens of providing adequate warnings of the train's presence at the Pine Crest Road crossing. We see no apparent reason why providing such warnings would require changes in KCSR's switching, train length, and crew operations. Second, in any event, the affidavit does not demonstrate that providing adequate warnings at the Pine Crest Road crossing would *unreasonably* burden or interfere with KCSR's operations. In the absence of such evidence, we presume Congress did not intend to preempt this

---

[13] To the extent the Elams allege KCSR was negligent *solely* because it blocked the Pine Crest Road crossing, that claim is impliedly preempted. For the reasons already discussed, any liability arising from such a claim would "have the effect of unreasonably burdening or interfering with" KCSR's decisions in the economic realm. *Franks*, 593 F.3d 411; *Friberg*, 267 F.3d at 443.

No. 10-60227

"typical dispute[]" concerning the safety of a "typical crossing[]." *Franks*, 593 F.3d at 415.

KCSR has not met its burden of showing that the Elams' simple negligence claim is preempted. Because preemption was the sole basis for the district court's sua sponte dismissal of this claim, we reverse and remand to the district court for further proceedings. The district court will need to determine whether the Elams' simple negligence claim in turn should be remanded to Mississippi state court. *See* 28 U.S.C. §§ 1367(c), 1441(c); *Barrois*, 533 F.3d at 333 (recognizing that routine "crossing cases are typically resolved in state courts").

As a final matter, KCSR asserts we should uphold the dismissal of the Elams' simple negligence claim on the merits. We do not reach the merits because they were not adequately briefed to either the district court or this Court. Indeed, because the district court sua sponte dismissed the Elams' claims on a motion to remand, KCSR has not yet even filed a motion to dismiss. *See, e.g.*, *Bogy v. Ford Motor Co.*, 538 F.3d 352, 355 (5th Cir. 2008) ("Although we have the authority to consider grounds presented to but not ruled upon by the district court, we decline to do so because the plaintiffs did not address the various other grounds in their briefing, and we think the better course is for the district court to address those issues in the first instance."); *Betzel v. State Farm Lloyds*, 480 F.3d 704, 709 (5th Cir. 2007) (declining to consider in first instance question of state law that was not fully briefed by parties).

## IV. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand to the district court for further proceedings.