# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 9, 2013

Lyle W. Cayce
Clerk

No. 12-60731

DONALD C. GUILD; SHARRON M. GUILD,

Plaintiffs-Appellants,

v.

THE KANSAS CITY SOUTHERN RAILWAY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
U.S.D.C. No. 3:11-cv-642

Before STEWART, Chief Judge, and KING and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants, Dr. Donald C. Guild and Sharron M. Guild ("the Guilds"), filed the instant suit against Defendant-Appellee, the Kansas City Southern Railway Company ("KCSRC"), seeking injunctive and monetary relief. Finding the Guilds' claims preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), the district court granted summary judgment without prejudice in favor of KCSRC. We affirm in part and we vacate and remand in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60731

## I.

In 1967, International Paper Company ("IPC") owned a piece of land in Brandon, Mississippi that it used as a wood-yard near a railroad track, which was operated by Illinois Central Railroad Company ("Illinois Central"). IPC and Illinois Central entered into an agreement wherein Illinois Central agreed to construct and maintain a spur or sidetrack (hereinafter, "the spur track") on IPC's property that would be connected to the main railroad track. IPC used the spur track in its wood-yard for the shipping operations of its business. The spur track was connected to the main track by a switch that could be flipped to divert railroad cars off the main track and onto the spur track or from the spur track onto the main track.

The agreement between IPC and Illinois Central provided that Illinois Central was the owner of "that portion of the Track from point of switch to right of way line." The agreement also stated that Illinois Central retained "the right at any time to remove that portion of the Track owned by it upon giving to [IPC] written notice of [Illinois Central's] intention to remove the same thirty (30) days before such removal shall be commenced."

Later, Meridian Speedway, L.L.C. ("Meridian") became the owner of the main track, which is now named the Meridian Speedway, and KCSRC began operating and maintaining the track. In June 2006, the Guilds purchased the property from IPC and used it for their business of maintaining a caboose museum. At that time, the switch connecting the spur track to the main track was still connected and functioning. According to Dr. Guild, he obtained through his son-in-law, George Trihoulis, assurances from KCSRC that the spur track attached to the main track would be kept open and operational.

Then, in late 2006, Meridian began working to upgrade the main track to allow for increased traffic and train speed. During the upgrade process, KCSRC obtained Dr. Guild's permission to temporarily use his property and spur track

2

No. 12-60731

for various needs associated with upgrading the main track such as parking railroad cars, work vehicles, crews, equipment, etc.  According to Dr. Guild, his spur track was damaged as a result of KCSRC's temporary use during its process of upgrading the main track.

Once the upgrading process was complete, KCSRC determined that the switch leading to the spur track was no longer compatible with the upgraded main track because it was not of sufficient weight or quality to safely accommodate the increases in train speed and volume.  Consequently, in May 2008, KCSRC sent a letter to Dr. Guild informing him that the switch would be removed in thirty days due to its incompatibility with the main track.  KCSRC also stated in its letter that the costs of upgrading the switch could not be justified in light of the insufficient traffic generated by Dr. Guild's caboose museum business.  Two years later, in October 2010, KCSRC removed the switch from the main track.

In August 2010, the Guilds filed suit in the Chancery Court of Rankin County, Mississippi seeking an order compelling KCSRC to install an upgraded switch on the main track and to reopen and maintain access to the spur track.  The Guilds also asserted claims of negligence seeking monetary relief on the grounds that KCSRC damaged the spur track by parking railroad cars of excessive weight on the track during the upgrade operations in 2006.

KCSRC removed the action and subsequently filed for summary judgment seeking dismissal of the Guilds' claims on the grounds of preemption by the ICCTA.  In August 2012, the district court granted without prejudice KCSRC's motion to dismiss.  During the summary judgment hearing, the district judge stated that the Guilds' claims were preempted by the ICCTA.  Accordingly, they were required to file a complaint with the Surface Transportation Board ("STB") prior  to initiating any court proceedings.  The district court clarified that its summary judgment in favor of KCSRC granting the motion to dismiss was

3

No. 12-60731

without prejudice should the Guilds choose to appeal the STB's decision on their claims in the future. The Guilds appeal the district court's grant of summary judgment.[1]

## II.

This court reviews a district court's grant of summary judgment de novo. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012) (citation omitted). The preemptive effect of a federal statute is a question of law that we also review de novo. *Franks Inv. Co. LLC v. Union Pac. R.R. Co.,* 593 F.3d 404, 407 (5th Cir. 2010) (en banc) (citing *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001)).

## III.

"In determining the existence and reach of preemption, Congress's purpose is 'the ultimate touchstone' to use." *Franks*, 593 F.3d at 407 (citation omitted). Congress can "indicate pre-emptive intent through a statute's express language." *Id.* (citation omitted). Congress may also "impliedly preempt state law 'if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law.'" *Id.* (citations omitted).

The ICCTA expressly states:

(b) The jurisdiction of the [STB] over --

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, ***or discontinuance of spur,***

---

[1] The district court did not issue a written opinion to accompany its final summary judgment in favor of KCSRC.

4

No. 12-60731

> *industrial, team, switching, or side tracks*, or
> facilities, even if the tracks are located, or intended to
> be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the
remedies provided under this part with respect to regulation
of rail transportation are exclusive and preempt the remedies
provided under Federal or State law.

*See* 49 U.S.C. § 10501(b) (emphasis added).

The Guilds argue that the district court's determination that their claims against the KCSRC are preempted by the ICCTA is inconsistent with this court's en banc opinion in *Franks*. We disagree.

In *Franks*, we determined that a possessory action brought by a property owner seeking to enjoin the railroad from removing two private crossings was neither expressly nor impliedly preempted by the ICCTA. 593 F.3d at 415. We explained that, "[f]or a state court action to be expressly preempted under the ICCTA, it must seek to regulate the operations of rail transportation." *Id.* at 413. We concluded that the property owner's possessory action, which involved a private servitude of passage over the railroad track, invoked laws which merely incidentally affected rail transportation, and thus, did not manage or govern rail transportation. *Id.* at 411. Moreover, we declined to accept the railroad's argument that railroad crossings were encompassed in the ICCTA's definition of "transportation," which would have resulted in federal preemption of the claims if that were the case. *Id.* at 409. Consequently, we held that the property owner's claims involving private crossings over the railroad track were not expressly preempted by the ICCTA. *Id.* at 413. Additionally, we found no evidence in the record that the private crossings created an "unusual interference with the railroad," which would have resulted in implied preemption. *Id.* at 415.

The Guilds switch claim, however, is distinguishable from the claims advanced by the property owner in *Franks*. The Guilds seek to compel KCSRC

5

No. 12-60731

to replace the switch connected to the spur track on the Guilds' property with an upgraded switch, and to open and maintain the switch so that it can function properly with the main track. Unlike the possessory claim in *Franks* relating to private crossings, the Guilds' switch claim is expressly preempted by the plain wording of the statute, which provides that "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks" is within the exclusive jurisdiction of the STB. 49 U.S.C. § 10501(b)(2).

Additionally, it cannot be disputed that the Guilds' attempt to compel KCSRC to add a switch connecting a spur track to the railroad's main track is a claim seeking "to regulate the operations of rail transportation." *Franks*, 593 F.3d at 413. KCSRC Roadmaster employee, Gregory R. Evans, attested to the following in his affidavit:

> In order to operate the spur track, *i.e.*, move cars back and forth between the mainline and the spur track, the switch must be lined so that cars cannot pass on the mainline, but instead are routed onto the industry spur. This process requires the train to operate in a slow, stop and go manner, and the mainline is usually completely blocked and impassable for the duration of the switching operations. The presence of a switch on the mainline also presents the potential for safety issues because if the switch is not properly lined, a train on the mainline could be derailed.

It is apparent from Mr. Evans' statements that the switch connecting the spur track not only interferes with the operation of the rail cars on the main track but also changes and/or re-directs their general direction. This is a far cry from the passive presence of a private crossing over a railroad track, which does nothing to change, re-direct or inhibit the direction of the rail cars or to regulate their operation. Because it is clear that the Guilds' switch claim is one seeking "to

No. 12-60731

regulate the operations of rail transportation," we hold this claim to be preempted by the ICCTA.[2]  *See Franks*, 593 F.3d at 413.

## IV.

The Guilds' also assert a negligence claim seeking compensation for the alleged damage that resulted from KCSRC's temporary use of the spur track during upgrade operations.  In their negligence claim, the Guilds allege that KCSRC damaged the spur track by parking rail cars of excessive weight on it.

As we previously have explained in cases analogous to this one, "only laws that have the effect of managing or governing rail transportation will be expressly preempted."  *Franks*, 593 F.3d at 410; *see also Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) ("Congress narrowly tailored the ICCTA preemption provision to displace only 'regulation,' *i.e.*, those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation." (alterations in original)).  Here, the Guilds' claim pertaining to their damaged spur track sounds in tort.  Consequently, the law to be applied to that claim, absent preemption, is that which Mississippi applies to negligence actions.  *See Franks*, 593 F.3d at 408.

The purpose of Mississippi's negligence law is not to manage or govern rail transportation.  *Cf. Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 807 (5th Cir. 2011) (noting, in contrast, that a Mississippi anti-blocking statute was preempted by the ICCTA because the law had "no  application except with respect to the operation of railroads at rail crossings").  Rather, "the effects of state negligence law on rail operations are merely incidental."  *Id.* at 813; *see*

---

[2] The procedure for the application of a switch connection and the subsequent remedy for a rail carrier's failure to install the switch as requested in the application is expressly provided in the statute.  *See* 49 U.S.C. § 11103.

*also Franks*, 593 F.3d at 411 ("This suit is governed by Louisiana property law and rules of civil procedure that have nothing to do with railroad crossings. . . . These property laws are not meant to regulate railroad transportation, though at times they may have an incidental effect on railroad transportation."). Accordingly, we conclude that the ICCTA does not expressly preempt the Guilds' negligence claim.

Of course, "[i]f a state law is not expressly preempted by the ICCTA, it still may be impliedly preempted." *Elam*, 635 F.3d at 805. In considering whether Mississippi's negligence law is impliedly preempted in the instant case, we must assess whether, as applied to the facts of this case, the law "would have the effect of *unreasonably* burdening or interfering with rail transportation." *Franks*, 593 F.3d at 414 (emphasis added) (internal quotation marks and citation omitted); *see also Elam*, 635 F.3d at 813. We previously have observed that "economic regulation is at the core of ICCTA preemption." *Elam*, 635 F.3d at 805; *see also Friberg*, 267 F.3d at 443 ("[I]t appears manifest that Congress intended the ICCTA to further that exclusively federal [regulatory] effort, at least in the economic realm."). We thus have held that state and local restrictions are preempted by the ICCTA when they directly "reach into the area of economic regulation of railroads," including by attempting to regulate "in such areas as train speed, length and scheduling." *Friberg*, 267 F.3d at 443. In contrast, we have held that simple negligence claims, such as the failure to provide adequate warning signs of a train's crossing, are not preempted. *See Elam*, 635 F.3d at 814.

Here, as the party asserting federal preemption, KCSRC bears the burden of persuasion. *Id.* at 802. KCSRC cannot satisfy this burden with general evidence or assertions that the Guilds' negligence claim would somehow affect rail transportation. *Id.* at 813. Rather, it "must come forward with evidence of

the specific burdens imposed." *Id.* We are not convinced that KCSRC has met this burden.

KCSRC contends that if it were "subject to ordinary state law negligence claims for the weight of its railcars, [it] would be forced to make adjustments to that weight to avoid liability, as best it could." KCSRC offers no support for this argument. It does not follow, however, that recompensing the Guilds for the damage that occurred to their private spur track, when they allowed KCSRC to store its equipment there without charge, would affect KCSRC's decisions regarding car weight on its mainline tracks. Indeed, in advancing their negligence claim for damage caused to the spur track, the Guilds are not attempting in any way to undertake economic regulation of railroads. To the contrary, this particular claim involves a simple negligence claim, similar to the one we held not to be preempted in *Elam*. 635 F.3d at 814. Accordingly, we hold that, based on the record before us, KCSRC has not demonstrated that allowing the spur track damage claim to proceed would have the effect of *unreasonably* burdening or interfering with KCSRC's operations. *Franks*, 593 F.3d at 414.

## V.

For the foregoing reasons, we AFFIRM the district court's summary judgment pertaining to the Guilds' switch claim. We VACATE the district court's summary judgment with respect to the Guilds' spur track negligence claim and REMAND for further proceedings.