ROBERT PITMAN, UNITED STATES DISTRICT JUDGE
Before the Court are two motions for summary judgment, one filed by Defendant Union Pacific Railroad Company ("Union Pacific"), (Dkt. 54), and another filed by Plaintiffs Cameron Beasley, Karis Beasley, William Beck, Brandy Beck, Jonathan Clayton, Stephanie Clayton, Teresa Derickson, Kathleen Fernandez, Linda Fiedler, Michael Finney, Rizalina Finney, Bruce Frankland, Margaret Frankland, Robert Frithiof, Jimmy Gable, Dayna Gable, Chris Gallo, Carmen Gallo, David Gattis, Yvette Gattis, James Hammond, Hattie Hammond, Mike Herbin, Jennifer Herbin, William Hockaday, Jereka Hockaday, Michael Huber, Joan Hamilton-Huber, Cecil Impson, Jr., Juanita Impson, Matthew Lafoon, Pedro Limon, Deanna Limon, Aaron Lovell, Emily Lovell, Timothy Malech, Jennifer Baggarly, Joseph O'Neal, Victoria Barnes, Arm Robinson, Darcy Robinson, Paul Ruiz, Crispin Ruiz, Richard Seaward, Nathan Sexton, David Thurman, Susan Thurman, Dave White, Sharon White, Kolby White, and Erica White (collectively, "Plaintiffs"), (Dkt. 56). Each party argues that it is entitled to summary judgment on Plaintiffs' sole claim: Union Pacific was negligent in the design, construction, inspection, and maintenance of the railroad embankment adjacent to Plaintiffs' subdivision. Having considered the parties' arguments, the evidence, and the relevant law, the Court finds that neither party has shown that it is entitled to summary judgment, and the motions should be denied.
I. BACKGROUND
This is a negligence case brought by owners of homes in the Arroyo Doble subdivision located in Manchaca, Texas ("Arroyo Doble" or the "neighborhood"). (See 2d Am. Compl., Dkt. 42, at 2, 4-5). Arroyo Doble is bordered by two waterways: Bear Creek to the north and Onion Creek to the east. (Arroyo Doble Map, Dkt. 54-2, at 2).
*475 The creeks converge just northeast of the neighborhood. To the west, Arroyo Doble is bordered by an embankment of railroad tracks between Hosrethief Trail at milepost 190.92 and Bear Creek at milepost 191.39. (Id. ). These tracks form a section of a mainline railroad track owned by Union Pacific that runs through several counties in central Texas, including Travis County (the "Austin Subdivision").
The Austin Subdivision was built in 1881. (Union Pacific Track Profile, Dkt. 54-4). Because the tracks are elevated, there are no ditches or culverts alongside the tracks between mileposts 190.92 and 191.39. (See id. ; Garcia Dep., Dkt. 54-14, at 16:10-21; Freeman Dep., Dkt. 54-25, at 25:14-24). But there are several drainage ditches throughout the Arroyo Doble property. One runs parallel to Union Pacific's tracks and the homes on the western border of the subdivision. (See id. ; Ditch Easement, Dkt. 54-3, at 2-3). Another runs perpendicular to Union Pacific's tracks. (See Topographic Survey, Dkt. 54-9).
In recent years, this area has experienced a series of flooding events. In October 2013, there were two significant storms. (See Meteorological Analysis, Dkt. 54-11, at 29). On October 13-14, 2013, a storm produced more than five inches of rain in one hour, correlating to a 325-year rainfall event. (Id. at 22-25). The storm washed out a portion of Union Pacific's Austin Subdivision around milepost 191.3. (Incident Summ., Dkt. 54-7, at 2). The washout was described as a "side wash," about ten feet long and four feet deep, though the parties dispute the extent to which the tracks were damaged. (Incident Rep., Dkt. 54-8, at 3; Lydick Dep., Dkt. 56-15, at 49:11-24). The washout was repaired by October 14, and the track was returned to service. (Incident Rep., Dkt. 54-8, at 3-4; Ashworth Rep., Dkt. 56-3, at 7). On October 30-31, 2013, another storm produced more than nine inches of rain over three hours, correlating to a 500-year rainfall event. (See Meteorological Analysis, Dkt. 54-11, at 15-19). There is no evidence that the Austin Subdivision was affected during this storm. And although each storm was significant, there is no evidence that any property in the neighborhood was flooded as a result of either event.
Two years later, on October 30, 2015, a record-setting storm hit the area, causing significant flooding throughout central Texas. (See KXAN Rep., Dkt. 54-28, at 1; Meteorological Analysis, Dkt. 54-11, at 7-11). Experts for both parties estimated that the October 30 storm correlated to at least a 250-year rainfall event. (See Williams Assessment, Dkt. 54-10, at 5; Meteorological Analysis, Dkt. 54-11, at 8-9). During the storm, a flashflood warning was issued for Travis County, and Union Pacific sent track inspectors to inspect the Austin Subdivision. (Ashmore Dep., Dkt. 54-15, at 31:7-32:19; Castillo Dep., Dkt. 54-19, at 13:16-23).
Due to the severity of the storm, the entire Austin Subdivision was taken out of service. (Ashmore Dep., Dkt. 54-15, at 31:19-24). Eventually, water levels overtopped most of the track adjacent to Arroyo Doble between milepost 191.39 (Bear Creek) and milepost 190.92 (Horsethief Trail). (See CDM Smith Rep., Dkt. 54-6; Williams Dep., Dkt. 54-17, at 39:3-42:18). A portion of the track washed out,[1] and water flowed over the tracks and into Arroyo Doble, flooding some of the neighborhood and damaging homes in the process. (Williams Dep., Dkt. 54-17, at 39:3-42:18; Benedict Rep., Dkt. 54-26, at 5).
*476 Twenty-nine Arroyo Doble homeowners sued Union Pacific, alleging that it was negligent in its design, construction, inspection, and maintenance of the railroad embankment and ballast that aligns the neighborhood's western border. (2d Am. Compl., Dkt. 42, at 4-5). Plaintiffs allege that Union Pacific's negligence enabled the washout, caused the flood of the Arroyo Doble neighborhood, and damaged their homes and property as a result. (Id. at 4).
II. LEGAL STANDARD
Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." Poole v. City of Shreveport , 691 F.3d 624, 627 (5th Cir. 2012).
The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Wise v. E.I. Dupont de Nemours & Co. , 58 F.3d 193, 195 (5th Cir. 1995). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts." Anderson , 477 U.S. at 248, 106 S.Ct. 2505 (citations and quotation marks omitted). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Miss. River Basin All. v. Westphal , 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc. , 395 F.3d 533, 538-39 (5th Cir. 2004).
III. DISCUSSION
To prevail on a common-law negligence claim in Texas, a plaintiff must prove three elements: "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." Nabors Drilling, U.S.A., Inc. v. Escoto , 288 S.W.3d 401, 404 (Tex. 2009) (quoting D. Houston, Inc. v. Love , 92 S.W.3d 450, 457 (Tex. 2002) ). "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." Id. (quoting El Chico Corp. v. Poole , 732 S.W.2d 306, 315 (Tex. 1987) ).
A. Plaintiffs' Motion for Summary Judgment
The plaintiff homeowners argue that they are entitled to summary judgment on both their negligence claim and Union Pacific's contributory negligence defense. (Pls.' Mot. Summ. J., Dkt. 56, at 3-4). Union Pacific argues that Plaintiffs' state-law negligence claim is preempted by the *477 Interstate Commerce Commission Termination Act of 1995 ("ICCTA"),[2] (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 3-8), and that Plaintiffs cannot establish the elements for their negligence claim because the October 2015 flood risk was not foreseeable. (Id. at 9-14). Union Pacific also argues that there are material fact questions as to whether Plaintiffs contributed to the flooding, thus precluding summary judgment on its contributory negligence claim. (Id. at 14).
1. Negligence
Plaintiffs argue that reasonable minds could not differ as to whether they have met each element for their negligence claim. (See Pls.' Mot. Summ. J., Dkt. 56, at 4). Union Pacific disagrees. It argues that it did not owe a duty to Plaintiffs because the 2015 washout and resulting damage to the Arroyo Doble homes was not foreseeable. (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 9-10). Union Pacific also argues that there are genuine disputes of material fact regarding whether Union Pacific breached any duty owed to Plaintiffs and whether any alleged breach proximately caused the Plaintiffs' injuries. (Id. at 10-14).
Assuming without deciding that a duty exists, Union Pacific has established the existence of a genuine issue for trial: whether the alleged breach of duty proximately caused Plaintiffs' injury. Proximate cause has two elements: proximate cause in fact and foreseeability. W. Invs., Inc. v. Urena , 162 S.W.3d 547, 551 (Tex. 2005). "These elements cannot be established by mere conjecture, guess, or speculation." Id. (quoting Doe v. Boys Clubs of Greater Dall., Inc. , 907 S.W.2d 472, 477 (Tex. 1995) ). "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." W. Invs. , 162 S.W.3d at 551 (quoting Doe , 907 S.W.2d at 477 ). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." Doe , 907 S.W.2d at 478. "The danger of injury is foreseeable if its 'general character ... might reasonably have been anticipated.' " Id. (quoting Nixon v. Mr. Property Management Co. , 690 S.W.2d 546, 549-50 (Tex. 1985) ).
Plaintiffs argue that Union Pacific's negligence proximately caused the damage to their property: but for Union Pacific's negligence, their homes would not have flooded, and their injury was foreseeable based on the October 2013 washout. (Pls.' Mot. Summ. J., Dkt. 56, at 10). In support of their claim, Plaintiffs offer a hydrology study by their expert hydrologist, Dr. Gerald Blackler ("Blackler"). (Blackler Study, Dkt. 56-2). Dr. Blackler's study relied on meteorological data produced by Union Pacific's meteorologist expert, Bryan Rappolt, the internal drainage design and maintenance guidelines and criteria for subdivisions, and the hydrologic modeling systems recommended by Union Pacific and industry standards. (Id. at 2-4, 8-9, 11-12). Blackler's report sought to resolve the following question: "What would be the extent of flooding after the October 30, 2015 storm event if [Union Pacific] had followed their standards, guidelines, and procedures for drainage design?" (Id. at 2). The study concluded that if the 100-year drainage design had been constructed before October 30, 2015, the Plaintiffs would have experienced either significantly reduced or no flooding. (Williams Rep., Dkt. 54-10, at 6). Plaintiffs conclude that "[t]here is no evidence to contradict this result," (Pls.' Mot. Summ. J., Dkt. 56, at *478 11), so they are entitled to summary judgment.
But there is evidence that contradicts this result. In response to Plaintiffs' expert, Union Pacific presents the finding of its own expert, David Ashworth ("Ashworth"). (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 13). Ashworth disagrees that Blackler's proposed design would have reduced flooding; he says that Blackler failed to consider the runoff within the subdivision itself. (See Ashworth Rep., Dkt. 63-3, at 7-8; Blackler Dep., Dkt. 63-4, at 94:3-95:9). Union Pacific also argues that Blackler has no experience designing this type of drainage system for railroad embankments. (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 13 (citing Blackler Dep., Dkt. 63-4, at 31:9-22) ). Finally, Union Pacific argues that the 2013 washout did not require any track outage or loss of rail service, so the more substantial 2015 flood was not foreseeable. (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 13-14; Incident Rep., Dkt. 54-7; Incident Rep., Dkt. 54-8).
If Union Pacific's expert is believed, a reasonable juror could conclude that Blackler's design would not have reduced flooding in the area, and thus any alleged negligence by Union Pacific did not proximately cause the Plaintiffs' injury. Thus, the Court concludes that Union Pacific has met its burden to show that there is a genuine issue for trial.[3] See Matsushita Elec. Indus. Co. , 475 U.S. at 585-87, 106 S.Ct. 1348 ; Wise , 58 F.3d at 195. Based on the record, a reasonable juror could find in favor of Union Pacific. As a result, summary judgment is not appropriate. See Miss. River Basin All. , 230 F.3d at 175.
2. Contributory Negligence
Plaintiffs also argue that they are entitled to summary judgment on Union Pacific's contributory negligence claim. Contributory negligence "allows a negligent defendant to defeat the plaintiff's recovery either partially or completely, depending on the percentage of the plaintiff's responsibility." Zorrilla v. Aypco Constr. II, LLC , 469 S.W.3d 143, 156 (Tex. 2015). "As a general rule summary judgment is not appropriate for cases involving contributory negligence." Moeller v. Fort Worth Capital Corp. , 610 S.W.2d 857, 862 (Tex. App.-Fort Worth, 1980, writ ref'd n.r.e.) ; see also Morales v. Craig , No. 03-99-00553-CV, 2001 WL 617187, at *5 (Tex. App.-Austin June 7, 2001, no pet.) ("Because the elements of negligence and proximate cause are inherently factual, they are not ordinarily disposed of by summary judgment.").
Plaintiffs say that "there is no evidence that Plaintiffs had a legal duty of care under the circumstances of this case nor that they breached any standard of care." (Pls.' Mot. Summ. J., Dkt. 56, at 11 (citing Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548 ).) Plaintiffs note that most of their homes are located at a higher elevation, outside the FEMA floodplain. (Pls.' Mot. Summ. J., Dkt. 56, at 11). Therefore, according to Plaintiffs, it was not foreseeable that their homes would flood, so they had no duty to exercise reasonable care to avoid flooding. (Id. ). With respect to those Plaintiffs whose homes are within the FEMA floodplain, Plaintiffs argue that they took reasonable care by purchasing flood insurance. (Id. ). Union Pacific argues that there are material fact questions as to whether Plaintiffs contributed to flooding because the neighborhood itself has a significant drainage system. (Def.'s Resp.
*479 Mot. Summ. J., Dkt. 63, at 14). Union Pacific also notes that Blackler, Plaintiffs' expert, testified that he does not think that the neighborhood drainage system would withstand a 100-year flood event. (See Blackler Dep., Dkt. 63-4, at 213:1-23). Accordingly, Union Pacific argues that a jury should decide whether Plaintiffs failed to ensure that the neighborhood drainage system was adequate, and to what extent it contributed to the flooding. (Def.'s Resp. Mot. Summ. J., Dkt. 63, at 14).
Union Pacific argues that the neighborhood draining system may have contributed to the flooding of Plaintiffs homes. There is at least a dispute of material fact that precludes the court from granting summary judgment. Plaintiffs are therefore not entitled to summary judgment on Union Pacific's contributory negligence claim.
B. Union Pacific's Motion for Summary Judgment
In its motion for summary judgment, Union Pacific argues that Plaintiffs' state law negligence claims based on the design and construction of drainage systems, as well as Plaintiffs' claims that Union Pacific violated industry standards and its own internal rules, are preempted by federal law. (Def.'s Mot. Summ. J., Dkt. 54, at 13-15). Union Pacific also argues that it is entitled to summary judgment on Plaintiffs' negligence claim based on the Track Safety Standards, 49 C.F.R. §§ 213.33 and 213.39, because it did not violate a duty under those regulations and because Plaintiffs cannot establish that any violations of those regulations proximately caused their damages. (Def.'s Mot. Summ. J., Dkt. 54, at 7-13, 15-18).
1. Preemption
Union Pacific first argues that Plaintiffs' state law negligence claims are preempted by two federal laws: ICCTA, 49 U.S.C. § 10501(b), and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20106(a)(1). (Dkt. 69, at 1). "In determining the existence and reach of preemption, Congress's purpose is 'the ultimate touchstone' to use." Franks Inv. Co. LLC v. Union Pacific R. Co. , 593 F.3d 404, 407 (5th Cir. 2010) (quoting Medtronic, Inc. v. Lohr , 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ). Congress can demonstrate its purpose in two ways. First, it may "indicate pre-emptive intent through a statute's express language." Id. (quoting Altria Grp., Inc. v. Good , 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) ). But even in that case, "the question of the substance and scope of Congress' displacement of state law still remains." Id. (quoting Altria Grp. , 555 U.S. at 76, 129 S.Ct. 538 ). Second, Congress can also "impliedly preempt state law 'if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law.' " Id. (quoting Altria Grp. , 555 U.S. at 76, 129 S.Ct. 538 ).
a. ICCTA
Union Pacific first argues that Plaintiffs' state law negligent design-and-construction claims are preempted by ICCTA. (Def.'s Mot. Summ. J., Dkt. 54, at 16). ICCTA was enacted to implement a "federal scheme of minimal regulation" for rail transportation. Elam v. Kan. City S. Ry. Co. , 635 F.3d 796, 804 (5th Cir. 2011) (cleaned up) (quoting H.R.Rep. No. 104-311, at 93, 96 (1995) ). ICCTA charged the Surface Transportation Board ("STB") with responsibility for oversight of the railroad industry. See id. ; 49 U.S.C. § 10501(a)(1). ICCTA includes an express preemption clause:
The jurisdiction of the Board over-- *480 (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.
49 U.S.C. § 10501(b).
Union Pacific argues that Plaintiffs' negligence claims are expressly preempted because they would have the effect of managing or governing rail transportation by dictating how drainage culverts should be built (See Def.'s Mot. Summ. J., Dkt. 54, at 16; Def.'s Reply Mot. Summ. J., Dkt. 69, at 2). Courts in the Fifth Circuit have repeatedly held that "only laws that have the effect of managing or governing rail transportation will be expressly preempted." Guild , 541 F. App'x at 367 (quoting Franks , 593 F.3d at 410 ); see also Tex. Cent. Bus. Lines Corp. v. City of Midlothian , 669 F.3d 525, 530-31 (5th Cir. 2012) ; Rushing v. Kan. City S. Ry. Co. , 194 F.Supp.2d 493, 501 (S.D. Miss. 2001). A state tort suit that attempts to regulate "such areas as train speed, length and scheduling, the way a railroad operates its trains, with concomitant economic ramifications" attempts to manage rail transportation in a direct way, and may thus be preempted. Franks , 593 F.3d at 411 (quoting Friberg v. Kansas City Southern Ry. Co. , 267 F.3d 439, 443 (5th Cir.2001) ).
But § 10501(b) does not expressly preempt generally applicable state laws that merely have a "remote or incidental effect" on rail transportation. Elam , 635 F.3d at 805 (quoting Franks , 593 F.3d at 410 ). This limitation extends to state common law tort and property claims because tort claims apply state common law and are thus not concerned with the regulation of rail transportation. See Guild v. Kan. City S. Ry. Co. , 541 F. App'x 362, 367-68 (5th Cir. 2013) ; Franks , 593 F.3d at 411 ; Elam , 635 F.3d at 807. Although such tort claims may still affect the management or governance of railroads if the railroad company is the tortfeasor, these claims arise under state common law and are not intended to regulate railroad transportation even if they may incidentally affect it. See Guild , 541 F. App'x at 367. Accordingly, the ICCTA does not expressly preempt state law negligence claims.
Nevertheless, the ICCTA may still impliedly preempt Plaintiffs' negligence claims. Elam , 635 F.3d at 805 (quoting Franks , 593 F.3d at 414 ). In considering whether Texas negligence law is impliedly preempted by ICCTA, the Fifth Circuit analyzes whether the law as applied to the facts of the case "would have the effect of unreasonably burdening or interfering with rail transportation." Franks , 593 F.3d at 413-14 (citation omitted). This inquiry is fact-specific, and Union Pacific, as the proponent of preemption, bears the burden of proof. See Elam , 635 F.3d at 813. General evidence that rail transportation may be affected is insufficient, and the Court begins with the assumption that Congress did not intend to supersede the historic police powers of the states to protect the health and safety of their citizens. Id. (quoting Medtronic , 518 U.S. at 475, 116 S.Ct. 2240 ).
*481 Ultimately, "economic regulation is at the core of ICCTA preemption." Elam , 635 F.3d at 805 ; see also Friberg , 267 F.3d at 443 ("[I]t appears manifest that Congress intended the ICCTA to further that exclusively federal [regulatory] effort, at least in the economic realm."). State laws are preempted by ICCTA when they "reach into the area of economic regulation of railroads," including regulations concerning "train speed, length and scheduling, [and] the way a railroad operates its trains." Friberg , 267 F.3d at 443. On the other hand, the Fifth Circuit has excluded simple negligence claims from ICCTA preemption. See, e.g. , Guild , 541 F. App'x at 368 (holding that negligent damage to spur caused by railcars not preempted); Elam , 635 F.3d at 814 (finding that negligence claim for failure to provide adequate warning signs of a train crossing not preempted).
Union Pacific argues that Plaintiffs' negligence claims are preempted because requiring it to install culverts and drainage ditches would unreasonably burden or interfere with rail transportation. (Def.'s Reply Mot. Summ. J., Dkt. 69, at 6). The thrust of Plaintiffs' claim is that Union Pacific was negligent in failing to conduct drainage studies and ensure adequate drainage of the railroad bed between mileposts 190.92 and 191.39. Union Pacific argues that the design proposal by Plaintiffs' expert, Dr. Blackler, would unreasonably burden or interfere with its railroad operations by require it to install culverts and redesign its drainage system. (Def.'s Reply Mot. Summ. J., Dkt. 69, at 6). For example, Union Pacific argues that Blackler's proposed design would cost over $ 1,900,000, require slow orders and re-routing of trains, result in the loss of railroad right-of-way, and require the relocation of multiple utility lines. (Def.'s Reply Mot. Summ. J., Dkt. 69, at 6-7 (citing Ashworth Report, Dkt. 69-2, at 10-11) ). Taken together, Union Pacific argues that these costs would be an unreasonable burden. (Id. at 7). By contrast, Plaintiffs contend that the lack of drainage could be remedied at a reasonable cost, and so their claims do not unreasonably burden or interfere with railroad transportation. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 14-15). As a result, Plaintiffs say their claims are not preempted. (Id. ).
In essence, the parties offer competing visions for how Union Pacific could remedy any potential drainage issue, and different cost estimates to ensure adequate drainage. Plaintiffs' expert contends that his design would not unreasonably burden or interfere with rail transportation, (see Blackler Rep., Dkt. 54-10, at 7-9, 42-44), while Union Pacific's expert argues the opposite, (see Ashworth Rep., Dkt. 69-2, at 10-11). It is not clear, moreover, that Blackler's proposed solution is the only solution available. Additionally, although Union Pacific asserts that Blackler's proposed design would require the installation of culverts or a sufficient drainage system, Plaintiffs do not seek an injunction ordering Union Pacific to do so-they seek only monetary damages for their injuries.
In light of these considerations, the Court concludes that Plaintiffs' claims are more akin to the simple negligence claims that the Fifth Circuit has held are not preempted by federal law. See, e.g. , Guild , 541 F. App'x at 368 ; Elam , 635 F.3d at 814. At this stage of the litigation, the Court is not convinced on the record before it that Union Pacific has shown that negligence liability would unreasonably burden or interfere with rail transportation. Accordingly, Plaintiffs' state law negligent design and construction claims are not preempted by ICCTA.
b. FRSA
Next, Union Pacific argues that Plaintiffs' state law negligence claim *482 based on Union Pacific's violation of industry standards and internal rules is preempted by the FRSA. (Def.'s Mot. Summ. J., Dkt. 54, at 17). Congress passed FRSA in order to create a nationally uniform regulatory scheme concerning railroad safety. 49 U.S.C. § 20106(a)(1), (2) ; CSX Transp., Inc. v. Easterwood , 507 U.S. 658, 661, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Accordingly, FRSA grants the Secretary of Transportation broad power to promulgate regulations "for all areas of railroad safety." Easterwood , 507 U.S. at 662, 113 S.Ct. 1732 ; see also 49 U.S.C. § 20103. And, like ICCTA, FRSA includes an express preemption provision: "A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation ... prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). "Legal duties imposed on railroads by the common law fall within the scope of these broad phrases." Easterwood , 507 U.S. at 664, 113 S.Ct. 1732.
State common law claims of negligence may be preempted if they attempt to impose additional regulations in an area already occupied by the FRSA or its accompanying regulations. See, e.g. , Armstrong v. Atchison , 844 F.Supp. 1152, 1153-53 (W.D. Tex. 1994). For example, courts have consistently found that FRSA preempts claims of negligently excessive train speed. See, e.g. , Easterwood , 507 U.S. at 673, 113 S.Ct. 1732 ; Hesling v. CSX Transp. Inc. , 396 F.3d 632, 637-38 (5th Cir. 2005) (concluding that a train operator was not negligent in maintaining speed within the federal regulations); Wilson v. Kan. City S. Ry. Co. , 276 F.Supp.2d 614, 619 (S.D. Miss. 2003) (concluding that negligence claims were preempted where train was traveling within the maximum speed allowed by federal regulations). In negligently excessive speed cases, the application of FRSA preemption is fairly straightforward. The federal government has imposed a speed limit for trains. But in some cases, states have sought to impose a lower speed limit. As a result, these cases often allege that a railroad operator is negligent in exceeding the state-imposed limit while complying with the federally imposed limit. See, e.g. , Thomas v. Nat'l R.R. Passenger Corp. (Amtrak) , No. 3:10-CV-00392-CWR-LRA, 2011 WL 13233292, at *3 (S.D. Miss. Dec. 20, 2011). Because the federal regulation explicitly conflicts with state regulation of track speed, a negligence claim based on exceeding a state speed limit is preempted because it would allow state tort law to determine the maximum speed in spite of federal regulations. See Armstrong , 844 F.Supp. at 1152-53.
That is not to say that FRSA preempts all state negligence claims. In fact, FRSA includes an exception to its preemption provision:
Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation ... covering the subject matter as provided in [ 49 U.S.C. § 20106(a) ];
(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by [the Secretary of Transportation]; or
(C) has failed to comply with a State law, regulation, or order that is not incompatible with [ 49 U.S.C. § 20106(a)(2) ].
*483 49 U.S.C. § 20106(b)(1) (emphasis added). Under this provision, even if Plaintiffs' negligence action "covers" the same subject matter as a regulation, Plaintiffs may still bring a claim for property damage if Union Pacific failed to comply with the federal standard of care established by the regulation. See Zimmerman v. Norfolk S. Corp. , 706 F.3d 170, 178 (3d Cir. 2013). In cases involving similar claims, courts have found that federal law does not preempt state negligence claims. Instead, the federal regulations provide the standard of care by which a defendant's actions are judged for negligence. See Indemnity Ins. Co. of N. Am. v. BNSF Railway Company , No. 4:16-CV-763, 2017 WL 5075929, at *4 (E.D. Tex. Sept. 29, 2017) (citing Nippon Yusen Kaisha v. Burlington & N. Santa Fe Ry. Co. , 367 F.Supp.2d 1292, 1301 (C.D. Cal. 2005) ; Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co. , 270 F.Supp.2d 1183, 1187 (C.D. Cal. 2003) ); Jeffers v. BNSF Ry. Co. , No. 14-CV-188, 2014 WL 1773532, at *4 (W.D. La. May 1, 2014).
Plaintiffs, however, are seeking money damages under state law negligence claims. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 6-7; Second Am. Compl., Dkt. 42, at 6-7). They explicitly disclaim any reliance on a federally established standard of care, or any internal rule that was created pursuant to a federal regulation. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 5). Instead, Plaintiffs "are claiming UPRR was negligent and UPRR's violations of its own internal standards provides evidentiary support for Plaintiffs' claims." (Id. ). And Plaintiffs specifically recognize that "there is no evidence that the internal standards cited were created pursuant to a federal regulation." (Id. ). As a result, Plaintiffs claims are not preempted only if there is no federal regulation enacted pursuant to FRSA that "cover[s] the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2) ; see Zimmerman , 706 F.3d at 178.
Union Pacific contends that Plaintiffs' state law negligence claims based on industry standards and Union Pacific's internal rules are preempted by the FRSA. (Def.'s Mot. Summ. J., Dkt. 54, at 17). In particular, Union Pacific argues that the subject of sufficient drainage is covered by the 49 C.F.R. § 213.33, which Union Pacific says "directly regulates drainage." (Id. at 14, 17). Section 213.33 provides that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.33.
The Supreme Court has noted that the FRSA "displays considerable solicitude for state law." Easterwood , 507 U.S. at 665, 113 S.Ct. 1732. Congress enacted FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Consistent with this purpose, the Secretary of Transportation has authority to "prescribe regulations and issue orders for every area of railroad safety." Id. § 20106(a)(2). The statute only preempts state laws that "cover" the same subject matter as the regulations; it does not preempt state laws where a regulation merely " 'touch[es] upon' or 'relate[s] to' that subject matter." Easterwood , 507 U.S. at 664, 113 S.Ct. 1732. Thus, in order to show that FRSA preempts Plaintiffs' negligence claims, Union Pacific must show that federal regulations "substantially subsume the subject matter of the relevant state law." Id.
Section 213.33 does not cover state law negligence claims by adjacent property owners. The regulation only requires that "[e]ach drainage ... facility ... should be maintained and kept free of *484 obstruction." 49 C.F.R. § 213.33. Additionally, § 213.33 only regulates the maintenance of existing drainage; the FRA has interpreted § 213.33 as embodying "no affirmative obligation to add more drainage openings into the roadbed." (FRA Op., Dkt. 54-27, at 2). According to the FRA, in the context of track and bridge structures, "maintenance" means "work, normally provided on a period basis which does not change the character of the facility." Categorical Exclusion Survey Review , 81 Fed. Reg. 35437, 2016 WL 3072377, at ¶ 11 (June 2, 2016). Federal regulations are otherwise silent on when additional drainage is required, what kind of drainage is appropriate, and how drainage should be installed.
Here, drainage structures do not exist. (Union Pacific Track Profile, Dkt. 54-4; Garcia Dep., Dkt. 54-14, at 16:10-21; Freeman Dep., Dkt. 54-25, at 25:14-24). Plaintiffs allege that Union Pacific's failure to add a drainage system to the tracks, consistent with Union Pacific's guidelines and industry standards, caused the flooding of their property. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 10). Although Section 213.33 mentions drainage, it merely touches upon, rather than substantially subsumes, the subject matter.
Additionally, Section 213.33 is concerned with railroad safety, not preventing damage to neighboring property. As Union Pacific notes, " Section 213.33 is aimed ultimately at ensuring the safety of railroad operations supported by the roadbed and associated track structures. Section 213.33 does not cover neighboring property unrelated to the safety of railroad operations." (Def.'s Mot. Summ. J., Dkt. 54, at 10). The regulation is silent with respect to a railroad operator's obligations to neighboring property. The harm sought to be avoided by § 213.33 is "wholly different" than the harm alleged by the Plaintiffs. See MD Mall Assocs., LLC v. CSX Transp., Inc. , 715 F.3d 479, 492-93 (3d Cir. 2013).
Preemption is improper when "the regulations provide no affirmative indication of their effect on negligence law." Easterwood , 507 U.S. at 668, 113 S.Ct. 1732. Plaintiffs' negligence claims do not seek any relief from a harm that is covered by the existing regulation. See Jeffers , 2014 WL 1773532, at *4 ; MD Mall Assocs. , 715 F.3d at 488 n.7. Thus, Plaintiffs' claims are not preempted by FRSA.
2. Negligence
Union Pacific also moves for summary judgment on Plaintiffs' negligence claim, arguing that it did not violate a duty under the Track Safety Standards. (See Def.'s Mot. Summ. J., Dkt. 54, at 10-15); see also 49 C.F.R. § 213.33. The existence of a duty is a question of law. Nabors Drilling , 288 S.W.3d at 404. "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." Id. (quoting El Chico Corp. , 732 S.W.2d at 315 ).
Plaintiffs' complaint alleges that Union Pacific "was negligent in its design, construction, inspection[,] and maintenance of the railroad embankment and ballast adjacent to the Arroyo Doble subdivision." (2d Am. Compl., Dkt. 42, ¶ 13). In their response, Plaintiffs clarified that they are not claiming that Union Pacific violated a federal standard of care. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 5). Instead, Plaintiffs assert state law negligence claims based on violations of Union Pacific's internal standards. (Id. ). In support of their claim, Plaintiffs argue that Union Pacific failed to comply with several Track Safety Standards, industry standards, and Union Pacific's internal rules. Union Pacific argues that "the undisputed facts demonstrate *485 that Union Pacific complied with the maintenance obligations imposed by the Track Safety Standards at all times." (Def.'s Mot. Summ. J., Dkt. 54, at 9).
Union Pacific fails to meet its burden to show that it is entitled to summary judgment on Plaintiffs' negligence claim. Although Union Pacific argues that it did not violate any duty under the Track Safety Standards, Plaintiffs have specifically named the source of Union Pacific's duty owed to them as "a general duty to exercise reasonable care to avoid foreseeable risk of injury to others." (See Dkt. 64, at 16 (citing El Chico , 732 S.W.2d at 310-11 ) ).[4] Union Pacific does not argue whether it owed or breached this general duty. Instead, Union Pacific argues that because Plaintiffs' general-duty negligence claim is based on alleged violations of its internal standards and industry standards, it is preempted by federal law. (See Def.'s Mot. Summ. J., Dkt. 54, at 16-17; Def.'s Reply Mot. Summ. J., Dkt. 69, at 2-8). But, as this Court concludes in this order, Plaintiffs' claims are not preempted. (See supra Section III.B.1). Union Pacific does not contest Plaintiffs' claims that it breached this general duty based on the internal and industry standards, or that breaching those standards proximately caused the flooding of Plaintiffs' homes.
Accordingly, Union Pacific has not met its initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. , 477 U.S. at 323, 106 S.Ct. 2548. Its motion for summary judgment on Plaintiffs' negligence claim should be dismissed.
3. The Onion Creek Homes
Union Pacific argues that it is entitled to summary judgment against the Plaintiffs whose properties are located directly on Onion Creek.[5] (Def.'s Mot. Summ. J., Dkt. 54, at 6, 19-20). There are three properties located directly on Onion Creek: (1) the Beasleys' property at 13010 Onion Creek Drive; (2) the Finneys' property at 13015 Stagecoach Way; and (3) the Herbins' property at 13007 Stagecoach Way. (See ids="6207800" index="130" url="https://cite.case.law/us/477/317/#p323">id. ; Arroyo Doble Map, Dkt. 54-2, at 2). Union Pacific argues that these properties were flooded by waters from Onion Creek *486 and not as a result of the embankment. (Blackler Dep., Dkt. 54-16, at 147:22-148:22, 150:18-151:6). Union Pacific also notes that their properties were also flooded in October 2013 by waters from Onion Creek (Beasley Dep., Dkt. 54-20, at 16:17-17:22; Finney Dep., Dkt. 54-21, at 8:18-11:25; Finney Dep., Dkt. 54-22, at 8:13-10:9).
Blackler testified that it is highly unlikely that the washout of UPRR's embankment affected the properties. (Blackler Dep., Dkt. 54-16, 147:22-148:22, 150:18-151:6; Williams Dep., Dkt. 54-17, at 144:15-146:23, 152:6-14). As a result, Union Pacific argues that Plaintiffs cannot show that Union Pacific's alleged breach of duty proximately caused damages to these properties. (Def.'s Mot. Summ. J., Dkt. 54, at 19-20; Def.'s Reply Mot. Summ. J., Dkt. 69, at 8-9). Plaintiffs offer no evidence, nor do they attempt to argue, that UPRR proximately caused flooding to these properties. In fact, Plaintiffs concede that under Blackler's modeling, the flooding of the Onion Creek homes belonging to the Beasleys, the Finneys, and the Herbins was not caused by Union Pacific's failure to ensure sufficient drainage for the portion of its track adjacent to the Arroyo Doble neighborhood. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 20-21). Thus, there is no dispute of any material fact regarding whether Plaintiffs can establish the proximate cause element for the Beasleys, the Finneys, or the Herbins. (Def.'s Reply Mot. Summ. J., Dkt. 69, at 8). Accordingly, Union Pacific is entitled to summary judgment with respect to these plaintiffs.
IV. CONCLUSION
For the reasons given above, IT IS ORDERED that Union Pacific's Motion for Summary Judgment, (Dkt. 54), is GRANTED IN PART . Summary judgment is granted in favor of Union Pacific with respect to Plaintiffs Cameron Beasley, Karis Beasley, Michael Finney, Rizalina Finney, Mike Herbin, and Jennifer Herbin. Those claims are DISMISSED WITH PREJUDICE . Union Pacific's Motion for Summary Judgment is DENIED with respect to all other requested relief.
IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment, (Dkt. 56), is DENIED .

This washout was more substantial than the October 2013 washout: approximately 100 feet in length, and six feet deep. (Williams Rep., Dkt. 54-10, at 15).

The Court will address Union Pacific's preemption argument in resolving Union Pacific's motion for summary judgment, infra Section III.B.1.

Having found a genuine issue of material fact on one of the elements for Plaintiffs' negligence claim, the court declines to consider the remaining elements in this motion for summary judgment.

In their complaint, Plaintiffs also allege that Union Pacific breached duties owed to them under the Track Safety Standards, 49 C.F.R. § 213.1 -.241 and FRA Safety Advisory 97-01. (See Dkt. 42, at 5). But in their response to Union Pacific's motion for summary judgment, Plaintiffs specifically limit the scope of their complaint: they "are not claiming that UPRR violated either a federal standard of care or an internal rule that was created pursuant to a federal regulation; Plaintiffs are claiming UPRR was negligent and UPRR's violations of its own internal standards provides evidentiary support for Plaintiffs' claims." (Dkt. 64, at 5; see also itation index="132" url="https://cite.case.law/citations/?q=49%20C.F.R.%20%C2%A7%20213.1">id. at 6). As a result, the Court refrains from analyzing whether Union Pacific owed a duty under federal regulations or standards created pursuant to a regulation or order issued by the Secretary of Transportation, and whether it failed to act according to that duty. See 49 U.S.C. § 20106(b)(1).

Union Pacific also argues it is entitled to summary judgment for the thirteen properties that would have flooded in October 2015 even if no railroad embankment existed. (Def.'s Mot. Summ. J., Dkt. 54, at 20; Williams Dep., Dkt. 54-17, at 140:7-142:17). Union Pacific relies on a hydraulic analysis of Plaintiffs' engineering expert, Dr. David Williams. (Def.'s Mot. Summ. J., Dkt. 54, at 20). Plaintiffs dispute the validity of the hypothetical scenario and point to Blackler's study to show that improved drainage alongside the embankment would have reduced flooding. (Pls.' Resp. Mot. Summ. J., Dkt. 64, at 19-20). At best, there is a factual dispute regarding the degree to which Union Pacific's embankment contributed to the flooding of Plaintiffs' homes, so summary judgment for these thirteen properties is inappropriate.