**Dissenting Opinion Filed March 11, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00856-CV**

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant**
**V.**
**ANGELA HORTON AND KEVIN HOUSER, Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-06507**

## DISSENTING OPINION

Before Chief Justice Burns, Justice Myers, and Justice Carlyle
Dissenting Opinion by Justice Carlyle

The majority's express-preemption conclusion is based on an analysis that both conflates the standards for express and implied preemption and relies on factually distinguishable, non-binding authority. There is no express preemption here because Texas negligence law and its remedies do not "directly attempt" to regulate rail transportation. The majority's focus on the effect of these particular claims in its express-preemption analysis is inappropriate, as such focus is specific to implied (or "as-applied") preemption. And to the extent Texas negligence law—as applied through the claims in this case—affects rail transportation, KCSR has not

conclusively shown this constitutes an "unreasonable burden or interference," a requirement for implied preemption. Thus, implied preemption is not applicable either and I must respectfully dissent.

## LEGAL PRINCIPLES

Where a state law conflicts with, or frustrates, federal law, the former must give way. U.S. CONST. art. VI, cl. 2. "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663–64 (1993).

Preemption can be express, when it is Congress's clear and manifest purpose, or it can be implied in certain circumstances, including when, as is alleged here, Texas negligence law, applied to the facts, would "have the effect of unreasonably burdening or interfering with" a railroad's operations. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 805 (5th Cir. 2011). The party asserting federal preemption has the burden of persuasion. *Id.* at 802 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)).

## EXPRESS PREEMPTION[1]

---

[1] The majority engages in a single thread of analysis, mixing components of express and implied preemption. I have separated these branches of analysis as the federal courts do, and on the assumption that the majority concludes both types of preemption apply.

I reject the majority's conclusion that KCSR sustained its burden to demonstrate the ICCTA expressly preempts these unfortunately typical state law negligence claims. Even when Congress includes an express preemption clause, as it did in the ICCTA, "the question of the substance and scope of Congress' displacement of state law still remains." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008).

First, the ICCTA's text:

> (b) The jurisdiction of the [Surface Transportation] Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).[2]

---

[2] I note that there is a very real question whether a rail crossing even constitutes a rail facility, keeping it outside the ICCTA in the first place. The Second Circuit has said "a rail crossing is not a rail 'facility' under 49 U.S.C. § 10102(9)" and astutely observed that if the definition of "rail transportation" for preemption purposes "includes the movement of people and property across railroad tracks, then any entity—an automobile, bicycle[,] or even a pedestrian passing over the crossing—would arguably be beyond the reach of state regulatory authority." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 103 n.9 (2d Cir. 2009). Regardless, there is no preemption here for the other reasons in this opinion.

–3–

The express preemption analysis examines whether the claims "fall squarely" under section 10501(b), meaning the state law—here, Texas negligence law—"directly attempts" to regulate rail transportation in the "economic realm." *Elam*, 635 F.3d at 806–08. Nothing in section 10501(b)'s text mentions state law negligence claims, and state negligence law does not have a purpose to directly regulate rail transportation. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) ("A negligence claim . . . is about compensating an injured party."). Section 10501(b) "does not expressly preempt generally applicable laws"—like state negligence laws—"that have a mere 'remote or incidental effect on rail transportation.'" *Elam*, 635 F.3d at 805; *see also id*. at 805 n.5 (quoting an ICCTA House Conference report "stating that 'exclusivity is limited to remedies with respect to rail regulation—not State and Federal law generally'"); *Gallo v. Union Pac. R.R. Co.*, 372 F. Supp. 3d 470, 480 (W.D. Tex. 2019) ("Although [state common law] tort claims may still affect the management or governance of railroads if the railroad company is the tortfeasor, these claims arise under state common law and are not intended to regulate railroad transportation even if they may incidentally affect it. . . . Accordingly, the ICCTA does not expressly preempt state law negligence claims." (citing *Guild v. Kan. City S. Ry. Co.*, 541 F. App'x 362, 367–68 (5th Cir. 2013))); *Union Pac. R.R. Co. v. Taylor Truck Line, Inc.*, No. 15-0074, 2018 WL 1750516, at *6–7 (W.D. La. Apr. 10, 2018) (finding no express preemption as to general state negligence law but concluding implied

preemption applied based on facts). From the ICCTA's text then, it appears Congress did not contemplate preempting state law negligence claims.[3]

The jury here awarded damages based on one or both of two negligence theories. The plaintiffs-appellees sought damages based first on a past failure to adequately warn drivers approaching the crossing. The Fifth Circuit has had little problem dispensing with express preemption as to that theory, stating,

> A typical negligence claim seeking damages for a typical crossing accident . . . does not directly attempt to manage or govern a railroad's decisions in the economic realm. Like state property laws and rules of civil procedure that generally "have nothing to do with railroad crossings," the effects of state negligence law on rail operations are merely incidental.

*Elam*, 635 F.3d at 813 (citing *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 414 (5th Cir. 2010)).

The plaintiffs' other theory, that the crossing here is too steep, is based on industry standards, not any state or federal regulation.[4] Specifically, KCSR has cited

---

[3] I struggle to imagine that Congress intended the five-member Surface Transportation Board to handle every state law negligence claim for grade-crossing accidents on top of the other matters listed in 49 U.S.C. § 10501(b). In 2019, the most recent year for which the Federal Railroad Administration has complete data as of this writing, there were 2,039 incidents (after excluding a portion equal to the nationwide percentage of pedestrian-only incidents), 215 of which were from Texas, the leading state for such incidents. *See* https://safetydata.fra.dot.gov. There were 1,928 vehicle–train incidents in 2015, the year the incident in this case occurred, and 159 of those were in Texas. Even half of those incidents resulting in personal injury litigation before the STB would create a tremendous addition to that body's areas of jurisdiction.

[4] Though the majority states that "[e]very court" addressing "preemption related to a tort or regulation involving a humped crossing" finds ICCTA preemption, that statement inaccurately portrays the breadth and depth of the law. *See Kan. City S. Ry. Co. v. Horton*, No. 05-19-00856-CV, slip op. at 12 (Tex. App.—Dallas Mar. 11, 2021, no pet. h.). The majority cites a case, *Texas Central Business Lines Corp. v. City of Midlothian*, 669 F.3d 525 (5th Cir. 2012), dealing with local regulations regarding crossings' slope, a different animal altogether than a routine negligence claim. And the majority cites two cases from a Mississippi bus accident that do not bind this Court and were wrongly reasoned. *See Waneck v. CSX Corp.*,

no part of Chapter 49 that regulates crossing grades, and I have found no part governing this topic, either in the United States Code or the accompanying regulations.[5] Further, though the majority attempts to define what a "routine" or "typical" crossing claim is in a way that excludes this very straightforward negligence claim, the courts and the STB have come close to defining what routine crossing claims are and these discussions do more to include the simple negligence claims here as "routine" rather than exclude them.[6]

Nor does our *A&W Properties* case, which found preemption and which KCSR cites, meaningfully support the majority's conclusion here. *See A&W Props.,*

No. 1:17cv106-HSO-JCG, 2018 WL 1546373, at *5 (S.D. Miss. Mar. 29, 2018); *Voigt v. CSX Transp., Inc.*, No. 3:17-cv-01018-N (N.D. Tex. June 19, 2017).

[5] And in any event, the Fixing America's Surface Transportation Act, Pub. L. 114-94 (eff. Dec. 4, 2015), delegates significant duties *to the states,* requiring them to develop state-specific grade crossing safety plans. The Texas Department of Transportation has complied with this requirement. As expected, railroads engage in a cost–benefit analysis to determine whether to take action regarding crossings, and Texas administers a partially federally funded and federally delegated Railroad Grade Separation Program, which evaluates existing crossings like the one at issue here, and which uses a formula taking into consideration average daily traffic, number of trains per day, total fatalities, total injuries, and total crashes, as well as certain assumptions to support a cost–benefit index, including "cost per fatality." *See* Rail-Highway Operations Manual (eff. Aug. 3, 2015) at "10. Other Rail-Highway Programs," submenu "2. Railroad Grade Separation Program (RGS)," available at http://onlinemanuals.txdot.gov/txdotmanuals.

[6] *See, e.g.*, *Elam*, 635 F.3d at 813 ("A typical negligence claim seeking damages for a typical crossing accident (such as the Elams' simple negligence claim) does not directly attempt to manage or govern a railroad's decisions in the economic realm." (citing *Franks,* 593 F.3d at 414)). Additionally, in its amicus brief to the en banc Fifth Circuit in *Franks*, the STB itself said, "Crossing disputes, despite the fact that they touch the tracks in some literal sense . . . do not fall into the category of 'categorically preempted' or 'facially preempted' state actions." No. 08-30236, 2009 WL 6297302, Br. at 11. It then cited one of its own decisions, stating that "'[t]hese crossing cases are typically resolved in state courts.' *Maumee & W. R.R. Corp. & RMW Ventures LLC*—Petition for Declaratory Order, STB Finance Docket No. 34354, 2004 WL 35985, at *2 (S.T.B. Mar. 2, 2004)." Later, the STB brief stated that state-law crossing ownership claims are not always expressly preempted, and that to so conclude would lead to absurd results, recognizing states' "longstanding role . . . in determining the needs of the public and of landowners for safe and adequate nonexclusive railroad/highway crossings." 2009 WL 6297302, Br. at 12 (quoting *Island Park*, 559 F.3d at 103).

*Inc. v. Kan. City S. Ry. Co.*, 200 S.W.3d 342 (Tex. App.—Dallas 2006, pet. denied). We focused there on preemption relating to "potential flooding" claims and specifically distinguished precedent (more like this case) that concluded "that the regulation of rail-highway crossings has been specifically reserved to the states." *Id*. at 348 (citing *Wheeling & Lake Erie Ry. Co. v. Pa. Pub. Util. Comm'n*, 778 A.2d 785, 792 (Pa. Commw. Ct. 2001)).

Second, the regulation cases the majority cites have little to do with the ultimate conclusion as to express preemption here. While those cases' discussion of the legal standard for preemption may be instructive, the ultimate conclusion that the ICCTA preempts a claim based on a regulation does not add much to our analysis of a routine negligence claim. Unlike local regulations seeking to directly manage rail transportation by prohibiting trains from blocking crossings for specified periods of time[7] or claims based on a railroad's usage or non-usage of particular tracks,[8] these state law negligence claims do not fit the mold for express preemption.

KCSR and the majority ignore that the case before us does not involve a state or local law targeted at the railroads. The majority relies heavily on *CSX Transportation, Inc. v. City of Sebree*, 924 F.3d 276 (6th Cir. 2019), which involved a local ordinance purporting to control how local railroad track embankments were

---

[7] *See Elam*, 635 F.3d at 808.

[8] *See Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 444 (5th Cir. 2001) (landscape nursery sued railroad when it went out of business due to trains using spur track; preemption applied because claim sought to assess liability due to railroad "economic decisions . . . pertaining to train length, speed[,] or scheduling").

to be constructed. Unlike in *Sebree*, the plaintiffs here relied on industry standards to support a negligence theory but never proceeded on a negligence per se theory dependent on a state, county, or city law. The *Sebree* ordinance required the city council to approve the railroad's grade change projects, and contained no "standards cabining the city council's discretion" and no "restrictions on how long the city council could take to decide" whether to allow the railroad "to conduct necessary maintenance or construction." *Id*. at 284. *Sebree* demonstrates just how different this routine negligence claim is from most, if not all, of the majority's regulation-based cases.[9]

Also, KCSR's argument has no obvious limit. To extrapolate ICCTA express preemption of state negligence law solely because a railroad might be held liable in a crossing case is contrary to the way the Supreme Court has told the lower courts to analyze preemption. *See Easterwood*, 507 U.S. at 663–64; *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1132 (10th Cir. 2007).

Finally, I disagree with the conclusions reached in the *Waneck* and *Voigt* cases the majority relies on. Notably, I am joined by the STB itself, which issued guidance in these cases and specifically stated the Federal Railroad Safety Act, not the ICCTA,

---

[9] The majority's attempt to analogize *Texas Central Business Lines* similarly fails. There, a different regulation required railroad embankments to adhere to certain slopes, and was stricter than industry standards. 669 F.3d at 533. The Fifth Circuit held the regulation was preempted because applying it "would directly affect where rail lines could be situated, as well as influence the distance between railroad tracks and the position of track-side equipment." *Id.* This meant it fell into the STB's exclusive jurisdiction over the "construction . . . of spur, industrial, team, switching, or side tracks, or facilities." *Id.*

applied. And we are not alone. *See Minton v. Paducah & Louisville Ry. Inc.*, 423 F. Supp. 3d 375, 383 (W.D. Ky. 2019) (granting motion to remand and specifically disagreeing with conclusion in *Voigt* and *Waneck* that ICCTA completely preempts state law negligent design claims centering on humped crossings).

The STB set forth its conclusion that ICCTA preemption did not govern the *Waneck*/*Voigt* cases in its May 23, 2018 decision[10]—after the *Waneck* court decision—and fortified this conclusion by its October 31, 2018 opinion on the railroad's motion for reconsideration.[11] In these matters, the plaintiffs made "rail safety-related claims, stemming from a train's collision with a bus" that was high-centered on a humped crossing. The STB specifically stated that

> because the ICCTA preemption provision can be read to cover virtually everything related to rail transportation and because rail safety-related claims will almost always touch on rail transportation and operations, interpreting ICCTA preemption to apply generally to safety regulations and safety-related claims would amount to a repeal by implication of the savings provision of FRSA.

2018 WL 5723286, at *5 (citations omitted). The STB went on: "regulation of rail safety, which Congress explicitly permitted under FRSA, is not inconsistent with regulation of interstate rail transportation under ICCTA" and "to give effect to both statutes, safety regulations and related claims are generally not subject to ICCTA preemption." *Id.* at *7. The STB's views deserve deep consideration, especially

---

[10] Waneck et al. Petition for Declaratory Order, No. FD 36167, 2018 WL 2392567 (STB May 23, 2018).

[11] Waneck et al. Petition for Declaratory Order and on Motion for Reconsideration, No. FD 36167, 2018 WL 5723286 (STB Oct. 31, 2018).

when they involve the very cases on which the majority founds its most important points. For all of the above reasons, I would conclude there is no express preemption here.

**IMPLIED PREEMPTION (ALSO CONFLICT OR AS-APPLIED PREEMPTION)**

Because the ICCTA does not expressly preempt the plaintiffs' simple negligence claim, the next inquiry would be implied preemption—whether Texas negligence law, applied to the facts, would "have the effect of unreasonably burdening or interfering with" KCSR's operations. *See Elam*, 635 F.3d at 805; *Franks*, 593 F.3d at 413. This inquiry is fact-based and here KCSR, the proponent of preemption, must show *conclusive* evidence of the "specific" burdens imposed. *Elam*, 635 F.3d at 813. The Fifth Circuit adopted this analysis from the STB itself. *See Franks*, 593 F.3d at 413 (quoting *CSX Transp., Inc.–Petition for Declaratory Order*, STB Finance Docket No. 34662, 2005 WL 1024490, at *2–3 (S.T.B. May 3, 2005)). Economic regulation of railroads is the core of implied ICCTA preemption. *Elam*, 635 F.3d at 806.

We begin again with the assumption that Congress did not intend to supersede the historic police powers of the states "to protect the health and safety of their citizens." *See Elam*, 635 F.3d at 813 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). As the Fifth Circuit has recognized, "the care of grade crossings is

peculiarly within the police power of the states."[12] *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (quoting *Lehigh Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs*, 278 U.S. 24, 35 (1928), for the historical understanding of "routine crossing cases" underpinning ICCTA). And that court instructs us that general evidence that rail crossings affect rail transportation is insufficient. *Elam*, 635 F.3d at 813 (citing *Franks*, 593 F.3d at 415, which discusses why general evidence as to crossings like those at issue in the case would not mandate implied or as-applied preemption of claims based on four specific crossings when the railroad failed to present evidence specific to those crossings).

As an initial matter, for the same reasons the Fifth Circuit expressed in *Elam*, the inadequate-warning negligence theory here is not impliedly preempted. *See id.* (simple negligence claim based on failure to warn arising from railway crossing accident not preempted by ICCTA).

But the plaintiffs also claimed KCSR was negligent because it failed to lower this humped crossing by at least 32 inches, a height they arrived at based on a set of industry standards. Even engaging KCSR's evidence provides it no quarter. KCSR's evidence that it would not be feasible to remove the hump included an initially vague

---

[12] The majority takes appellees to task for not providing the entire quotation, but the rest of the quote only amplifies the standard for implied preemption—that crossing claims are not preempted "unless by reason of their effect on economical management and service, their general bearing is clear." No. 05-19-00856-CV, slip op. at 19. The majority concludes KCSR conclusively demonstrated that the simple negligence claim here constitutes an attempt to unreasonably burden or interfere with the railroad's operations. *Id.*, slip op. at 15 n.10. I disagree with that assessment and therefore, like the appellees, present the concise, relevant portion of the *Barrois* quotation.

"several hundred thousand dollar" removal estimate and, notably, *no* estimates of the length of time the crossing would be closed for repairs and *no* testimony regarding the disruption, if any, to rail transportation. *Cf. A&W Props., Inc.*, 200 S.W.3d at 344–45. KCSR's expert later gave a potential maximum cost, $300,000, but even with this, I would not agree KCSR presented the proper quantum of evidence to meet its burden. The as-applied analysis courts must undertake requires more. At that cost and without significantly more evidence to support the time and disruption, KCSR cannot even begin to show that the traditional exercise of state negligence law to provide a vehicle for compensating victims of its negligence constitutes an attempt to economically regulate it. *See Elam*, 635 F.3d at 814 (concluding railroad's evidence did not demonstrate an unreasonable burden on or interference with railroad operations).

On this record, I would conclude KCSR failed to meet its implied-preemption burden to *conclusively* demonstrate that Texas negligence law, applied to the facts, would "have the effect of unreasonably burdening or interfering with" its operations. *See Elam*, 635 F.3d at 805; *Franks*, 593 F.3d at 413. Thus, I would conclude the ICCTA does not impliedly preempt appellees' claims.[13]

---

[13] I note also that KCSR claimed a type of impossibility defense to the humped-crossing theory by suggesting that it did not possess the authority to remediate the road on either side of the crossing because that was Hunt County's responsibility. The railroad, which is asking for ICCTA preemption to apply such that a state law will not expose it to liability, is using the other side of its mouth to claim a rural county would stand in its way if it truly wanted to remediate a dangerously humped crossing. Because KCSR did not designate the county as a responsible third party, this line of defensive reasoning reveals itself for what it was: jury argument. It has little application to us in the appellate sphere. For these additional reasons, I reject KCSR's preemption argument.

**CONCLUSION**

Having considered and rejected KCSR's position that the ICCTA expressly and impliedly preempts the negligence claims here, I would see no basis for *Casteel* error and would affirm the verdict the jury rendered.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

190856DF.P05